Argued February 24, affirmed July 25, petition for reconsideration
denied September 27, 1977, petition for review denied January 13, 1978

STATE OF OREGON, *Respondent,*
*v.*
RODERICK RAYMOND ADDICKS, *Appellant.*
(No. C 75-03-0905 Cr, CA 5410)
566 P2d 1212

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

LEE, J.

**LEE, J.**

Defendant appeals his jury conviction for murder (ORS 163.115) raising numerous assignments of error, the more significant of which relate to the court's denial of motions for mistrial and for a judgment of acquittal, and the giving of an "unfair" jury instruction. We find no error.

Defendant and the victim were partners in a bookkeeping and tax return business located in Portland. On August 28, 1974, the victim was beaten and strangled to death in the office space occupied by the partnership. Dennis Cartwright testified that he and defendant had together planned and executed the murder as a means of enabling defendant to gain control of the business. Defendant contends that the court erred in denying his motions for acquittal and a directed verdict because the testimony of Cartwright, an accomplice, was not "corroborated" as required by ORS 136.440(1).[1]

■  Among the witnesses produced by the state were a Silas Cross and a Michael Turnipseed, both of whom testified that during the summer of 1974 they had cooperated with defendant in formulating plans to dispose of his business partner, but had disassociated themselves from any attempt to carry out those plans prior to August of that year. Cross also testified that in the course of a conversation which occurred in December of 1974 defendant had admitted killing the victim. The testimony of these witnesses was sufficient to provide the requisite corroboration.

■  Midway in the lengthy trial, which required more

---

[1] ORS 136.440(1) provides:

"A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission."

than two weeks, during the state's direct examination of Cross the following exchange occurred:

> "Q  And did the State agree to give you immunity on this murder case if [you] would testify?
>
> "A  That was part of it, yes.
>
> "Q  Okay. And what else was agreed in that respect?
>
> "A  There was immunity on other crimes that I was involved in with Mr. Addicks."

At that point, based upon the witness' reference to "other crimes" defendant moved for a mistrial. In denying that motion the court stated that it did "not feel at this stage that [the reference to 'other crimes'] is sufficiently prejudicial to the defendant * * *," and further observed that:

> "* * * If I thought it was prejudicial to the extent that he could not get a fair trial because of that comment, I would certainly give him a mistrial. But I don't think so * * *. This is a complicated case. Unfortunately, witnesses at times say things that are best left perhaps unsaid. But they are only human; they are not trained in the law."

Thereafter, the court admonished the jury that:

> "Any reference of this witness to the defendant in his last answer is stricken from the record, and the jury will expressly disregard it. It is not for your consideration."

That the witness' reference to "other crimes" in which he had been involved with the defendant was improper is apparent.[2] In light of the fact that the comment was less than specific and that the court immediately took action to remedy its inadvertent introduction, however, we cannot say as a matter of law that the court erred when it concluded that there was no likelihood the jury would be influenced in its fact-finding function by the irregular testimony. Accordingly, the court did not abuse its discretion in denying the motion for a mistrial based upon the passing reference to "other

---

[2] *See, State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Pitts,* 29 Or App 59, 562 P2d 562 (1977); *State v. Hockings,* 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976).

crimes." *State v. Stanley,* 30 Or App 33, 566 P2d 193 (1977).

■ During the state's examination of Cross the following exchange also occurred:

> "Q   Did you decide to get an attorney?
> "A   [The state] offered to pay an attorney for me if I wanted to talk to an attorney. They wanted me to take a polygraph test."

Defendant also moved for a mistrial based upon the witness' reference to the "polygraph test," arguing that the jury could, as a result of the testimony, infer "that a polygraph was involved in these cases * * *." Pointing out that the testimony did not indicate that any polygraph test had actually been administered, the court nonetheless instructed the jury "* * * that the last statement made by the witness is stricken from the record and will be disregarded by the jury," and denied defendant's motion. Like the previous denial this was, we believe, based upon a reasonable judgment that the reference to the polygraph was not prejudicial. The trial court did not abuse its discretion in denying the motion. *State v. Stanley,* supra.

■ Defendant had initially been arrested on March 17, 1975 by federal authorities in the state of Washington for a violation of federal Securities and Exchange Commission laws. Lodged in the Pierce County, Washington jail at the time, defendant's personal possessions, including his wallet, were taken from him and retained by authorities. After the return of the indictment for murder on March 20, 1975 upon which this prosecution was based, Officer Englert of the Multnomah County Sheriff's Office proceeded to the Pierce County Jail on March 22, 1975 where, without a warrant authorizing the same, he conducted a search of defendant's wallet. That search resulted in the discovery of the telephone number of a witness who testified at trial that defendant had called her from the murder scene on the night of the murder. On appeal defendant argues that this testimony should have been excluded from evidence as the "fruit of an

unlawful search," contending that the warrantless search of the wallet some five days after his arrest was violative of rights guaranteed by both the Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Oregon Constitution.[3] In *United States v. Edwards,* 415 US 800, 39 L Ed 2d 771, 94 S Ct. 1234 (1974), the court concluded that

"* * * once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest[4] may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial." 415 US at 807.

It is undisputed that defendant had been "lawfully arrested" prior to the seizure and search of his wallet.

The following was included in the court's instructions to the jury:

"A person is criminally liable for the conduct of another person constituting a crime if * * * he aids or abets such other person in planning or committing the crime even though not personally present at the time and place of the commission of the homicide."

Defendant contends that because the state's "theory" throughout the trial had been that he, rather than Cartwright, had killed the victim by strangulation, the giving of this instruction, pursuant to which the

---

[3]Prior to trial defendant had moved to suppress the wallet and the contents on the same grounds. The trial court denied that motion holding that:

"* * * the search and seizure of the wallet was proper in that it did not violate the Fourth Amendment of the United States Constitution nor the similar provision in the State Constitution. It being a search incident to a lawful arrest * * *."

[4] *See; United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973); *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974).

jury could have found defendant guilty, even if they were to find that Cartwright had actually killed the victim, "violated the rules of fair play."

■■ A jury does not resolve the question of guilt or innocence simply by deciding whether the state's "theory of the case" has been proved beyond a reasonable doubt. It determines whether a defendant is guilty or innocent by applying the law—as explained by the judge—to what it finds the ultimate facts of the case to be. The state did produce evidence tending to show that defendant and Cartwright had entered into an agreement to commit the murder charged. It was not error to instruct the jury upon all legal theories of guilt within the framework of the accusatory instrument which might have been applicable to the facts ultimately found. *Cf. State v. Washington,* 273 Or 829, 543 P2d 1058 (1975); *State v. Rawls,* 247 Or 328, 429 P2d 574 (1967).

No useful purpose would be served by discussing defendant's further assignments of error, at least one of which relates to the use of a witness compensated in some way by the state since it involves an issue substantially similar to one previously considered and rejected by this court in defendant's recent appeal from a conviction for arson. *State v. Addicks,* 28 Or App 663, 560 P2d 1095 (1977).

Affirmed.