Submitted on record and briefs June 1,
affirmed November 23, 1981, reconsideration denied January 14,
petition for review denied February 10, 1982 (292 Or 568)

RODERICK RAYMOND ADDICKS,
*Appellant,*

*v.*

CUPP,
*Respondent.*

(No. 107,834, CA 19495)

636 P2d 454

Roderick R. Addicks, Salem, filed the brief pro se for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Virginia L. Linder, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner appeals denial of his petition for post-conviction relief from his conviction for murder.[1] He alleged his rights to due process of law and substantial fairness were violated in the following particulars:

1. The state failed to disclose exculpatory evidence of "substantial significance";

2. The police authorities were guilty of improper conduct and procedures in investigating the crime;

3. The jury was given "erroneous and unlawful" jury instructions; and

4. Petitioner was denied a "fair trial and the right to efficient [sic] counsel."

We summarize only those facts of the crime necessary to resolve this appeal. Defendant was convicted of the beating and strangulation murder of his business partner which occurred on August 28, 1974. At trial, Dennis Cartwright testified that he and defendant had planned and executed the murder to enable defendant to gain control of the business. Among the other witnesses produced by the state were Silas Cross and Billy Anglin, each of whom testified that during 1974 they were offered $5,000 to kill petitioner's business partner. Cross testified that he had agreed with petitioner to commit the crime, that petitioner brought him a gun with which to kill the victim and that at the last minute Cross decided he could not go through with the act and returned the gun to petitioner. Anglin testified that he was approached twice by Cartwright to commit the murder. Sometime after Cartwright's initial proposal, Anglin, who lived in Washington, began doing undercover narcotics work for the Richmond, Washington, police and notified them of Cartwright's proposal in July, 1974, more than a month before the murder.

In February, 1975, Detective Englert of the Multnomah County Sheriff's Office seized a gun in petitioner's possession, because it appeared to match the gun described by Cross as the one given him by petitioner. However, when shown the gun, Cross denied that it was the same weapon, and Englert returned it to petitioner.

---

[1] Petitioner appealed his conviction to this court, and it was affirmed. *State v. Addicks,* 30 Or App 249, 566 P2d 1212, *rev den* 280 Or 521 (1977).

In March, 1975, petitioner and Cartwright went to Anglin's home in Washington. At the post-conviction hearing, Detective Englert testified that Anglin had telephoned him to report that petitioner was at his home with a gun and that he was afraid for his life. Anglin had earlier been questioned by Englert regarding the murder and his involvement with Cartwright. Englert assured Anglin that he had nothing to worry about and that petitioner had no knowledge of Anglin's conversations with the police. However, Anglin again telephoned to say that he had taken a gun from petitioner's car. Englert testified during the post-conviction proceeding that he was upset at this and advised Anglin to put the gun back. When Englert learned the next day that Anglin had kept the gun, he told him to turn it over to the Richmond police. At the time of trial, Englert knew that the gun was in Richmond; however, the gun was neither produced nor its whereabouts disclosed by the prosecution prior to or at the time of trial.

■    Petitioner's first contention is that he was denied due process of law by the state's failure to disclose evidence of substantial significance in response to his motion for discovery. He contends that, pursuant to *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), he is entitled to post-conviction relief. Under *Brady,* as interpreted by the Oregon appellate courts, constitutional due process is violated when it is shown that the state was in possession of undisclosed evidence that was of

> "* * * substantial significance for the defense— * * * which, if believed by a trier of fact, would be seriously considered by that trier of fact in determining guilt or innocence." *Hanson v. Cupp,* 5 Or App 312, 320, 484 P2d 847 (1971).

Petitioner has the burden to make some showing to support a good faith belief that the undisclosed evidence was material and exculpatory. *State v. Koennecke,* 274 Or 169, 545 P2d 127 (1976). In this assignment, petitioner contends the state suppressed physical and testimonial evidence. We discuss each item separately.

## 1.  Petitioner's Gun.

He claims that the prosecution's failure either to produce or disclose the location of the gun taken by Anglin

was a denial of due process, because he would have used the gun at trial to impeach Anglin by showing he was a thief. He also contends he would have used the gun to impeach Cross by showing the gun to Cross and eliciting a response that that gun was not the one petitioner allegedly provided to Cross to kill the victim.

■ ■ We first note that petitioner's gun, in custody of the Washington police, was not connected in any way with the murder of the victim, who was beaten and strangled. If the gun had any relevance or materiality, it was tangential and related only to possible impeachment. Evidence which has only impeachment value is considered material in a constitutional sense only in circumstances where it would probably impeach a key prosecution witness, which would in turn affect the outcome of the trial. *See Urban v. Cupp,* 33 Or App 453, 576 P2d 841, *rev den* 283 Or 99 (1978). Anglin was not a key prosecution witness.

■ ■ In addition, petitioner incorrectly assumes that the evidence that Anglin "stole" the gun would be admissible to impeach him. A witness may not be impeached by evidence of a particular wrongful act, except by proof of a conviction of a crime. ORS 45.600. In any event, it is doubtful if the evidence would have been significantly impeaching. Petitioner's trial counsel acknowledged at the post-conviction hearing that evidence of Anglin's theft of the gun was potentially prejudicial to petitioner because it would have disclosed that Anglin was afraid petitioner was going to kill him. It was thus very speculative whether the evidence would have been helpful to petitioner at trial. Mere speculation that undisclosed evidence might be helpful is insufficient. *See State v. Koennecke, supra.*

■ Petitioner also contends that he could have used the gun to bolster his claim that Anglin was a police agent, so that "procedural rules applicable to the police should have been used to evaluate Anglin's activities." He does not indicate what effect Anglin's asserted agency would have had on the outcome of the trial or how such evidence would have been material. The post-conviction court found that Anglin was not an agent of the Oregon police when he took the gun. That finding is supported by the evidence.

■ Petitioner also claims that, had the gun been produced, he could have showed it to Cross during trial, have

had Cross deny it was the gun allegedly provided to Cross and thereby have proved that he did not give Cross a gun. He stated he would have produced witnesses to testify that he owned only one gun. Evidence that petitioner did not give Cross the gun in question does not establish that some other gun was or was not provided to Cross by petitioner. Petitioner did not produce or name the witnesses he claimed were available. The court was not required to believe petitioner's unsupported claim.

Photographs of the gun were taken by the police after it was initially seized from petitioner by Detective Englert. These photographs were admitted at the pretrial hearing and were available to petitioner to show to Cross and establish what petitioner claims could have been proven. We conclude, as did the post-conviction court, that petitioner did not prove a violation of his due process rights because of the failure of the state to produce the gun.

## 2. Cartwright's Plea Bargain.

Petitioner claims that the state's failure fully to disclose the terms of Cartwright's plea bargain denied him due process of law. At the time of petitioner's trial, Cartwright had already pled guilty to the murder and was confined in the Oregon State Penitentiary. He had been granted immunity from prosecution for certain lesser charges related to the murder. During cross-examination of Cartwright, petitioner's trial counsel elicited that Cartwright had been promised assistance by the state relating to charges in Washington and a pending parole violation proceeding. Trial counsel did not pursue the matter further. Additional cross-examination would have undoubtedly disclosed the fact that Cartwright would not be charged with the lesser offenses. The court found the evidence, although not disclosed, would not have been material or have probably affected the outcome of the trial. We agree.

## 3. Use of Promises and Rewards.

Petitioner argues that substantial promises and monetary rewards were given to certain witnesses, and consequently their testimony was untrustworthy and subject to impeachment. This issue was substantially litigated at trial, was an issue raised by petitioner in direct appeal

and cannot be relitigated in a post-conviction proceeding. Petitioner nevertheless contends that the information about the reward money and promises made to certain witnesses was not disclosed at his trial. The record of petitioner's trial shows the information was available and was extensively utilized by his trial counsel during trial.

### 4. Evidence of Prior Contacts Between Cross and Cartwright.

During trial, Cross and Cartwright testified that they did not know each other prior to the murder. Petitioner claims the state had evidence it did not disclose that they knew each other prior to their contacts related to the murder. The evidence petitioner points to is the testimony of a witness before a grand jury which indicted petitioner on an unrelated arson charge. The witness testified that the names of Cross and Cartwright were used as grantees on separate deeds used in the scheme to burn houses and collect the insurance proceeds. Although the evidence indicates Cross and Cartwright were involved in an arson scheme with petitioner, it does not show that the two men knew each other. The witness testified that he met Cross and Cartwright, but there is no indication he met them at the same time. Petitioner has not met his burden to show that the evidence was exculpatory in the sense it would have tended to prove what he asserts or that it would have lead to the discovery of evidence that would likely have affected the outcome of the trial.

### 5. Grand Jury Testimony.

Petitioner requested a transcript of all the grand jury testimony. He was provided with a transcript of the testimony of some witnesses. His claim is that he suspects other grand jury testimony would have been inconsistent with the testimony of other witnesses who testified before the grand jury and at trial.

In *State v. Hartfield,* 290 Or 583, 624 P2d 588 (1981), the Supreme Court held that

"* * * after a witness has testified on direct examination by the state, the defendant is entitled to examine an existing tape recording of that witness's testimony given in the grand jury proceedings that led to the return of the indictment upon which trial is held." 290 Or at 592.

Petitioner's discovery motion sought "all notes, minutes, recordings, testimony and transcripts" of the grand jury proceedings. Under *Hartfield* the motion sought more than he was entitled to receive. As found by the post-conviction court, the state provided all the recordings of the grand jury testimony it had. Petitioner, however, contends this finding is in error. He produced an order appointing a court reporter to appear and transcribe the grand jury testimony pursuant to ORS 132.090. This establishes only that a court reporter was appointed to record the proceedings; it does not prove what testimony was in fact recorded. The reporter was not called as a witness, and no other evidence on the point was offered. Petitioner has not proved the state withheld transcripts of grand jury proceedings he was entitled to have.

## 6. Miscellaneous Information.

Petitioner claims the state withheld what he characterizes as "other miscellaneous" information. Petitioner has not demonstrated how this miscellaneous information would be material or exculpatory.

In his second assignment of error, petitioner complains generally about what he characterizes as improper police conduct in investigating the murder. Much of the argument under this assignment is a reiteration of contentions made under the first assignment that the state withheld information and we will not again address those contentions. The issues that are materially different relate to evidence of Cross' fear of petitioner and the activities of the victim's son in obtaining evidence used at trial.

Petitioner contends that the evidence does not show Cross was afraid of him and that Detective Englert's testimony to the contrary was false and misleading. We have examined the portions of the record which petitioner says demonstrate the false and misleading statements and conclude that the record does not support his claim. These references involve minor discrepancies which were collateral to the actual issues at trial. They do not show that Detective Englert gave misleading testimony.

Petitioner claims that the victim's son, Stan Turel, was a police agent during the course of the murder investigation and that, therefore, all the materials seized by him

were taken in violation of petitioner's Fourth Amendment rights. The post-conviction court found that Stan Turel was not a police agent. That finding is supported by substantial evidence. Petitioner raised this issue in his pretrial motion to suppress any evidence obtained by Stan Turel. The motion was denied. Denial of the motion to suppress could have been raised on direct appeal and cannot be relitigated in a post-conviction proceeding. ORS 138.550(1). However, petitioner claims that much of the evidence regarding Stan Turel's involvement in the investigation was not disclosed prior to trial. He does not explain what evidence was not disclosed. The issue of Stan Turel's agency was fully litigated in the pretrial hearing.

■ ■ The third assignment relates to certain jury instructions which petitioner asserts were erroneous and to the failure of the trial court to give certain requested instructions. Petitioner concedes that the issues of the instructions could have been raised on direct appeal, but he argues we should now consider these issues for two reasons: First, that his appellate counsel was ineffective in not raising these issues on direct appeal; and, second, regarding instructions on lesser-included offenses, the law has changed since his direct appeal. Petitioner did not raise an issue of effective assistance of appellate counsel in the post-conviction proceedings, and we decline to address that issue. Regarding the second ground, petitioner cites *State v. Thayer,* 32 Or App 193, 573 P2d 758, *rev den* 283 Or 1 (1978), and argues that his requested instruction relating to the lesser-included offense of manslaughter should have been given. He contends that *Thayer* changed the law regarding lesser-included offense instructions by holding that defendant's claim that he did not commit the murder did not deprive him of the right to instructions on lesser-included offenses. In *Myers v. Cupp,* 49 Or App 691, 621 P2d 579 (1980), *rev den* 290 Or 491 (1981), we said that where a new constitutional principle is articulated between the time of petitioner's direct appeal and his petition for post-conviction relief, a claim based on the new constitutional principle may be considered in a post-conviction proceeding. To be entitled to relief, petitioner must assert a substantial denial of a constitutional right. *Thayer* involved interpretation of statutory requirements and of existing

law and application of a lesser-included offense instruction to a particular set of facts. No new constitutional principle was announced. The post-conviction court did not err in declining to grant relief on this particular claim.

Petitioner's final argument is that he was denied assistance of effective counsel at trial.[2] Petitioner's original petition made this allegation, but it was not included in the amended petition. The court inquired of petitioner's counsel whether the amended petition reflected all the issues petitioner wished to raise and was told it did. Because the issue was not raised or litigated in the trial court, it is waived.

We have examined all of the multiplicity of issues raised by petitioner on appeal and conclude the court did not err in dismissing the petition.

Affirmed.

---

[2] Petitioner also contends that due to a partial hearing loss he was unable to hear all the proceedings at trial and unable to adequately assist in his defense. This assertion was not made during the post-conviction proceeding, and there is no factual basis in the record for this claim.