Argued and submitted July 8, 1985, conviction affirmed; remanded for resentencing January 29, 1986

# STATE OF OREGON,
*Respondent,*

*v.*

# REYNOLDS CARLYLE HAZLITT,
*Appellant.*

## (C83-03-33814; CA A33178)

713 P2d 617

Jan Peter Londahl, Portland, argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for theft in the first degree. ORS 164.055. He contends that the trial court erred in denying his motion for acquittal, because the evidence was not sufficient to prove that he knew or had good reason to know that the diamond which he was convicted of selling was stolen. He also contends that it erred in ordering him to pay restitution to the insurer which provided coverage for the diamond's owner, because the insurer's loss did not result from his sale of the diamond. We hold that the evidence is sufficient to support the conviction and remand for resentencing with respect to restitution.

Concerning the sufficiency of the evidence, the question on appeal is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Harris,* 288 Or 703, 721, 609 P2d 798 (1980). We resolve conflicts in the evidence in favor of the state after a verdict of guilty. *State v. Krummacher,* 269 Or 125, 137, 523 P2d 1009 (1974).

On July 20, 1982, a diamond ring was stolen during a robbery. Defendant later bought that ring at an illegal gambling establishment. He offered to sell it to Cooper, a second-hand jewelry dealer. He told Cooper that there was possibly a "problem" with the ring. According to the testimony, in the second-hand jewelry business, a "problem" with an item of jewelry means that it is stolen. Cooper did not buy the ring. Defendant then offered to sell it to a man named Ely. Ely initially declined, because he thought that the price was too high. A few days later, defendant offered to sell Ely the setting without the diamond center stone. Ely purchased the setting and gave it to a friend to sell in California. Police officers contacted Ely soon thereafter and informed him that they suspected that the ring had been stolen, and Ely agreed to assist them in recovering the setting. When Ely next saw defendant, he asked him whether he was aware that the ring had been stolen. Defendant acted very nervous and responded that he did not know that it had been stolen.

Ely, with the help of his attorney, obtained immunity from prosecution in return for his efforts in recovering the setting. He later told defendant that "everything was taken

care of for me" and that his lawyer would "handle it." Ely did not mean that the ring was not stolen, nor did he ever tell defendant that the ring was not stolen. The setting was eventually recovered.

During that period, an undercover police officer bought a watch from defendant. He suspected that the watch had been stolen in the robbery, but he was mistaken. The same officer later inquired about purchasing the diamond. Defendant initially said that he had the diamond but, after discovering the officer's true identity, claimed that he no longer had it. In February, 1983, defendant sold the diamond to Ely, who resold it, and it was never recovered.

Defendant was convicted in a trial to the court on the basis of his sale of the diamond to Ely. He was not convicted of the sale of the setting to Ely. Specifically, defendant was convicted of theft by receiving. ORS 164.095 provides:

"(1)   A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another *knowing or having good reason to know that the property was the subject of theft.*

"(2)   'Receiving' means acquiring possession, control or title, or lending on the security of the property." (Emphasis supplied.)

The evidence is sufficient to prove beyond a reasonable doubt that defendant knew or had good reason to know that the diamond was the subject of theft. He told Cooper that there might be a "problem" with the ring, meaning that it had been stolen. After he sold the setting to Ely but before selling him the diamond, Ely asked him whether he was aware that the ring had been stolen. Finally, the undercover officer's attempted purchase of the diamond should have made defendant aware that the police were interested in the diamond. The jury could have found that, if he did not know already, that attempt would have given him good reason to know that what Ely had asked concerning the ring was accurate. The trial court did not err in denying defendant's motion for acquittal.

The next issue is whether restitution is appropriate and, if so, in what amount. The insurer which provided coverage for the robbery victim initially paid her $10,000 for

the loss of the ring. It valued the diamond center stone at $8,000 and the setting at $2,000. After the setting was recovered and turned over to the insurer, the victim bought it back for $2,000. The insurer sought restitution totalling $8,775, consisting of $8,000 for the diamond and $775 for a reward that it had paid. The trial court ordered defendant to make restitution to the insurer in that amount. It requested defendant to submit a summary of his assets so that a payment schedule could be established. No payment schedule was ever established.

The restitution statutes are ORS 137.103 to 137.109. ORS 137.106(1) provides:

"When a person is convicted of criminal activities which have resulted in pecuniary damages, unless the presentence investigation report contains such a presentation, the district attorney shall investigate and present to the court, prior to or at the time of sentencing, evidence of the nature and amount of such damages. In addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim."

ORS 137.103 provides:

"As used in ORS 137.101 to 137.109, 137.540, 161.675 and 161.685:

"(1) 'Criminal activities' means any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.

"(2) 'Pecuniary damages' means all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling.

"(3) 'Restitution' means full, partial or nominal payment of pecuniary damages to a victim. Restitution is independent of and may be awarded in addition to punitive compensation awarded under ORS 137.101.

"(4) 'Victim' means any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities; 'victim' shall not include any coparticipant in the defendant's criminal activities."

Under ORS 137.106(1), a defendant's potential liability for restitution is limited to pecuniary damages resulting from his criminal activities. *State v. Tuma,* 292 Or 194, 637 P2d 614 (1981); *State v. Eastman/Kovach,* 292 Or 184, 637 P2d 609 (1981); *State v. Dillon,* 292 Or 172, 637 P2d 602 (1981); *State v. Sellers,* 76 Or App 552, 709 P2d 768 (1985). Defendant does not argue that the insurer was not a "victim" or that the losses it suffered were not "pecuniary damages." He argues only that the insurer's loss resulted from the original theft of the diamond rather than from his subsequent sale of it and that, therefore, he is not liable for restitution.

■ We disagree insofar as the insurer's $8,000 loss for the diamond is concerned. Defendant was not convicted for the robbery, nor did he admit to participating in it. However, his criminal activity was as responsible for the insurer's loss as that of the perpetrators of the robbery. His sale of the diamond was part of a chain of criminal events which resulted in the disappearance of the diamond, for which the insurer incurred an $8,000 loss. The trial court acted within the confines of ORS 137.106(1) in ordering defendant to pay the insurer for that loss.

■ Restitution for the reward is more problematic. Defendant can be held liable for that only if it was paid as a result of his sale of the diamond. The record does not reveal why the insurer paid the reward. If it paid it for the recovery of the setting, defendant cannot be held liable, because he was not convicted for the sale of the setting, nor did he admit selling it to Ely with knowledge that it was stolen. On remand, the trial court must determine the basis of the reward. If it cannot be linked to defendant's sale of the diamond, he cannot be held liable for it.

■ Finally, defendant argues, and the state concedes, that the trial court erred in failing to establish a restitution schedule. *See* ORS 161.675; *State v. Calderilla,* 34 Or App 1007, 580 P2d 578 (1978). The trial court must establish a schedule on remand.

Conviction affirmed; remanded for resentencing.