Argued and submitted October 31, 1986, affirmed September 16, reconsideration denied October 30, petition for review denied December 15, 1987 (304 Or 547)

STATE OF OREGON,
*Respondent,*

*v.*

MARK STEVEN MORIARTY,
*Appellant.*

(C85-02-30723; CA A38376)

742 P2d 704

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defendant, Salem.

David Schuman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his conviction for murder, arguing that the court should not have given instructions on aiding and abetting and that imposition of restitution was improper. We affirm.

In early 1974, defendant and Makin opened an auto repair shop. In April, 1974, Makin disappeared. The day after the disappearance, defendant's girl friend, Kim, told Makin's wife that he had gone away with another woman and that Kim and defendant had paid him for all of his interest in the business.

Defendant and Kim had a long-term relationship. Although they were not married until 1977, they had lived together for some time before that. At trial, Kim characterized their relationship as rocky; they were divorced in 1983. After the divorce, defendant and Kim did not get along. In February, 1985, they had an encounter in which defendant smashed his car into Kim's car. After that incident, Kim contacted the District Attorney's office through her attorney and reported that defendant had killed Makin in 1974. They negotiated an agreement that granted Kim immunity from prosecution for statements that she might make at defendant's trial, but not from prosecution for murder. She directed the police to Makin's burial site in the back yard of the house that she and defendant had shared in 1974. The examining pathologist concluded that Makin had been killed by gunshots to the head and chest.

Both defendant and Kim testified at defendant's trial. They agreed that Makin was killed at the auto shop and that they had acted in concert in hiding the body and in cleaning up the blood and other traces after the murder. Each had had conflicts with Makin that would provide independent motives for killing him. Their testimony differed in one important respect: each indicated that the other had killed Makin. Kim testified that defendant phoned her 45 minutes after he had killed Makin and that she then went to the shop, where she assisted defendant in covering up the crime. Defendant testified that the three of them were together at the shop when Kim and Makin began arguing. Kim then pulled out a gun. Defendant testified that he was scared and ran out the door. After he was outside, he heard two shots. He then

encountered Spillers, a friend he had invited to stop by. He sent Spillers away and re-entered the shop and saw Makin lying in a pool of blood.

■ ■ Defendant does not challenge the substance of the aiding and abetting instructions, but contends that they should not have been given. He argues that there was no direct evidence of collusion between defendant and Kim which would support the conclusion that defendant intended to promote or facilitate the commission of the crime and that the instructions were contrary to the state's main theory that defendant was a principal.

ORS 161.155 provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2)    With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b)    Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime."

An instruction on aiding and abetting is improper if there is no evidence to support the charge. *State v. Townsend,* 237 Or 527, 529, 392 P2d 459 (1964). Although mere presence at the scene of a crime does not constitute aiding and abetting, "the least degree of concert or collusion between the parties to an illegal transaction makes the act of one of them the act of all." *State v. Stark,* 7 Or App 145, 152, 490 P2d 511 (1971).

■ In the absence of direct evidence of collusion before the commission of a crime, a court may instruct on aiding and abetting if there is evidence sufficient to support an inference of collusion. *State v. Pruett,* 24 Or App 555, 546 P2d 475, *rev den* (1976). Although there was no *direct* evidence of collusion, there was sufficient *circumstantial* evidence to support the inference that defendant and Kim had acted in concert in killing Makin in their actions both before and after the crime.[1]

---

[1] Even though actions *after* the commission of a crime cannot alone constitute aiding or abetting, ORS 161.155(2)(b); *State v. Hoygaard,* 59 Or App 473, 651 P2d 168 (1982), they may be used as evidence that earlier activities were aiding and abetting. *State v. Jackson,* 64 Or App 667, 669 P2d 826 (1983); *State v. Hightower,* 17 Or App 112, 520 P2d 470 (1974).

Both were present at the scene of the crime during the murder or shortly thereafter. Defendant testified that when Kim pulled the gun he was scared and ran out of the garage but, by his own testimony, rather than fleeing or seeking help from his friend who arrived at the scene right after the shooting he sent him away and re-entered the garage. Both had had disputes with the victim which could constitute a motive to kill him. Defendant had threatened to kill the victim. It is uncontradicted that defendant and Kim worked together in cleaning up traces of the crime, disposing of the body and concealing the crime for approximately ten years. Indeed, the major difference between their testimonies is that each accused the other of pulling the trigger. All of these facts taken together support an inference that there was collusion and would allow the jury to have so found beyond a reasonable doubt.

■    The fact that the aiding and abetting theory of the crime was not the state's main theory does not preclude an instruction on that theory if it is "within the framework of the accusatory instrument which might have been applicable to the facts ultimately found." *State v. Addicks,* 30 Or App 249, 255, 566 P2d 1212 (1977), *rev den* (1978); *see State v. Pruett, supra.* An aiding and abetting theory was within the framework of the accusatory instrument and those facts upon which it could be based. The instruction was proper.

■    Defendant also argues that the court erred in imposing restitution. The court ordered him to pay Makin's wife and children $46,921.60 at $190 per month beginning on his release from prison, as restitution for lost earnings. ORS 137.106(1) allows the court to award restitution "[w]hen a person is convicted of criminal activities which have resulted in pecuniary damages * * *." The prerequisites for restitution are: "(1) criminal activities, (2) pecuniary damages, and (3) a causal relationship between the two." *State v. Dillon,* 292 Or 172, 181, 637 P2d 603 (1981). Defendant argues that the concealment of the body, not the murder, caused the loss of Social Security benefits and that concealment is not criminal activity. Even accepting the argument that the loss of benefits did not result from the murder, defendant's knowing concealment was a crime. ORS 146.100(4); ORS 146.992(3).

■    The restitution awarded represented pecuniary

damages resulting from the criminal activity. "Pecuniary damages" are defined as

> "all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling." ORS 137.103(2)

The damages awarded were essentially for lost earnings. The trial court used as a measure of lost earnings the Social Security benefits that Makin's family could have but did not receive, because they could not prove that Makin was dead. Lost earnings are special damages, *Conachan v. Williams,* 266 Or 45, 58, 511 P2d 392 (1973), and may be awarded as restitution. ORS 137.103(2). Further, the damages here arose "out of the facts or events constituting the criminal activity." *State v. Hazlitt,* 77 Or App 344, 713 P2d 617 (1986).

■    Finally, defendant argues that the damages could not have been recovered in a civil action, because a wrongful death claim would have been time-barred. Even assuming that a wrongful death action would have been time-barred, the standard is not whether the victim had a claim against defendant at a particular time but whether damages were caused by conduct "for which the defendant could have been civilly liable." *State v. Dillon, supra,* 292 Or at 182. ORS 137.103(2). The statute does not require that damages be recoverable by an action at the time when restitution is imposed.

Affirmed.