Argued and submitted February 23, reversed July 25, 1990

In the Matter of
Christopher Michael Holloway, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Christopher Michael HOLLOWAY,
*Appellant.*

(43,684D; CA A61891)

795 P2d 589

554

James T. Marquoit, Portland, argued the cause for appellant. With him on the brief was Saxon, Marquoit and Bertoni, Portland.

Vera Langer, Assistant Attorney General, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Child appeals from a judgment in which he was found to be within the jurisdiction of the juvenile court because of a finding that he had committed attempted murder.[1] Our review is *de novo.* ORS 419.561(4); *State ex rel Juv. Dept. v. Knaak,* 70 Or App 172, 173-74, 688 P2d 123 (1984).[2] We reverse.

This case involves what has come to be known as a gang-related drive-by shooting. The state pursued its case on two alternative theories. Child either fired the shots or aided and abetted another who fired the shots.[3] Child contends that the state failed to prove "any" of the elements of the offenses alleged in the petition beyond a reasonable doubt.[4]

---

[1] ORS 419.476(1)(a) provides:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city."

Attempted murder, if committed by an adult, would constitute a crime. ORS 161.405(1) defines "attempt" as follows:

"A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

ORS 163.115(1)(a) provides, in relevant part:

"[C]riminal homicide constitutes murder:

"(a) When it is committed intentionally."

[2] In criminal trials, we review the evidence in the light most favorable to the state to determine whether the evidence is sufficient to meet the beyond a reasonable doubt standard. *State v. Jackson,* 64 Or App 667, 669, 669 P2d 826 (1983).

[3] ORS 161.155 provides, in relevant part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime."

[4] ORS 419.500(1) provides, in relevant part:

"The facts alleged in the petition showing the child to be within the jurisdiction of the court as provided in ORS 419.476(1), unless admitted, must be established by a preponderance of competent evidence. However, in the adjudicative phase of a hearing where a finding of jurisdiction may result in institutionalization under ORS 419.509(1), the facts must be established beyond a reasonable

The state's petition alleged these acts:

"A. ATTEMPTED MURDER - ORS No. 163.115(a) [*sic*] - committed as follows:

"On or about the 4th day of June, 1989, in the County of Multnomah, State of Oregon, Christopher Michael Holloway did unlawfully and intentionally attempt to cause the death of another human being, to-wit: Jamal Bridge, by shooting at Jamal Bridge.

"B. ATTEMPTED MURDER - ORS No. 163.115(a) [*sic*] - committed as follows:

"On or about the 4th day of June, 1989, in the County of Multnomah, State of Oregon, Christopher Michael Holloway did unlawfully and intentionally attempt to cause the death of another human being, to-wit: Joseph Martinez, by shooting at Joseph Martinez."

The state presented no direct evidence that child pulled the trigger, and there is no circumstantial evidence that reasonably supports a finding that child shot at anyone.

Under the theory of accomplice liability, the state was required to prove beyond a reasonable doubt that child (1) had the "intent to promote or facilitate the commission of a crime" by another and that child (2) aided or abetted or agreed or attempted to aid or abet such other person in planning or committing the crime. ORS 161.155(2)(b). Only circumstantial evidence supported those elements.

The issue is whether the evidence allows us to infer beyond a reasonable doubt that child possessed the requisite "intent to promote or facilitate" *and* that child advised, counseled, procured, encouraged, countenanced, assisted or gave aid to the principal actor. ORS 161.155(2)(b); *State v. Rosser,* 162 Or 293, 344, 91 P2d 295 (1939); *State v. Start,* 65 Or 178, 182, 132 P 512 (1913).

The evidence showed that a group of six to nine male youths were in the cab and bed of a compact pickup truck that was involved in a drive-by shooting in Portland at about 10 p.m. on June 4, 1989. Several, if not all, of the occupants of the

doubt."

*See also In re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970). Child was made a ward of the court and committed to MacLaren School for Boys for a term not to exceed five years.

truck were members of the Cripps street gang. The truck passed by a residence known by the police to be a house where a member of the rival Bloods street gang lived. As it passed, someone in the truck yelled, "What's up, cuz?" to two Bloods members who were sitting on the front porch of the house. About five minutes later, the same truck passed by again. One or more unidentified occupants in the truck yelled, "Kill 'em" and "Shoot that slob." Gun shots were fired from the truck in the direction of the two Bloods members. The intended victims took cover and escaped injury.

Two police cars happened to be within view of the truck at a distance of about 225 feet as the shots rang out. One of the officers immediately turned his spotlight on the truck. The truck's occupants abandoned the vehicle and fled in two directions on foot.

An officer testified that the truck's license plates had been recently removed. The officer stated that that technique is commonly used in gang-related drive-by shootings to avoid identification. Baseball bats and a tire iron were also found in the bed of the truck. No fingerprint evidence was obtained.

Child was in the truck and was seen running from the scene. Police arrested five youths shortly thereafter, but child was not among them. About three weeks later, police responding to a gang-related call saw child walking along a sidewalk. He fled. Police pursued and arrested him. After his arrest, child was interrogated. After first denying the fact, he admitted being present in the bed of the pickup at the incident, but said, "I didn't fire at them." He said he did not have a weapon that night. He admitted being a Cripps member. A tattoo on his arm further demonstrated his membership in the gang.

The state proved beyond a reasonable doubt that child was either in the bed or the cab of the truck, but mere presence at a crime is insufficient to establish aiding and abetting. *State v. Moriarty,* 87 Or App 465, 468, 742 P2d 704, *rev den* 304 Or 547 (1987). Similarly, acquiescence alone is not sufficient to constitute aiding and abetting. *State v. Stark,* 7 Or App 145, 151-52, 490 P2d 511 (1971).

The state argues, and we accept, that the least degree of concert or collusion between accomplices suffices, *State v. Moriarty, supra,* 87 Or App at 468, but the concert or collusion

by the accomplices in *Moriarty* and *Stark,* a case on which *Moriarty* relied, was predicated on some act shown to have been done by the accomplice. In *Moriarty,* the accomplice helped clean up traces of the murder, disposed of the body and concealed the crime for 10 years. In *Stark,* the accomplice picked a fight with two hitch-hikers, kicked them and stood about a foot away from them as others in his group demanded the hitch-hiker's wallet.

■ Here, statements were màde immediately preceding the shooting from which a trier of fact could infer that *someone* in the truck possessed the necessary intent to aid and abet, but the evidence failed to tie those statements to any specific person in the truck, let alone to child. There is no evidence from which we can reasonably infer that child made any statement.

The state introduced only evidence that *all* of the vehicle's occupants should have been aware that a drive-by shooting was planned. The strongest evidence showed that recent removal of license plates is common before a drive-by shooting, that Cripps and Bloods are antagonistic to one another, that baseball bats were present in the bed of the truck and that child stated he "didn't fire at them."[5] That is insufficient to allow us to infer beyond a reasonable doubt that child aided and abetted.

Reversed.

---

[5] We recognize that actions and statements *after* commission of a crime can be used as evidence that earlier activities were aiding and abetting. *State v. Hightower,* 17 Or App 112, 115, 520 P2d 470 (1974).