Argued and submitted January 29, affirmed August 5, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOAQUIN DEJESUS NAVARRETE-PECH,
aka Alfredo Cantocanul,
aka Joaquinn Dejesus Navarette-Pech,
*Defendant-Appellant.*

Multnomah County Circuit Court
060532951; A134790

213 P3d 1262

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Deits, Senior Judge.

ROSENBLUM, J.

### ROSENBLUM, J.

Defendant appeals his convictions for attempted murder, second-degree assault, and third-degree assault. He asserts that the court erred in denying his motion for judgment of acquittal (MJOA) on the third-degree assault charge; that the court erred in admitting his codefendant's testimonial statements without an opportunity for cross-examination in violation of his confrontation right under the federal constitution; that the court erred in entering a judgment of conviction on the attempted murder charge without a unanimous jury verdict; and, finally, that the court erred in imposing Measure 11 sentences on the attempted murder and second-degree assault charges because he was convicted of those crimes on an aiding and abetting theory. We affirm.

The issues presented here are very similar to those in *State v. Lavadores*, 230 Or App 163, 214 P3d 86 (2009), and, because defendant was tried jointly with the defendant in *Lavadores*, the evidentiary record is identical. We set out the facts at some length in *Lavadores*, *see* 230 Or App at 165-67 (2009), and summarize them only briefly here. Defendant and codefendant Lavadores (codefendant) were arrested following an altercation at an apartment complex in which a third man, identified by the nickname Yucca, punched and then shot another man.[1] Defendant admitted to the police that he and codefendant had accompanied Yucca to the scene of the altercation, knew that Yucca was looking for another man with whom he intended to fight, had agreed to go with him "to fight" the man that Yucca had found, and had known in advance that Yucca was armed with a pistol. Codefendant, in a separate interview, told the police that he and defendant had gone with Yucca to confront the other man, were present during the fight and the shooting, and had waited for Yucca in defendant's vehicle after the shooting.

Both defendant and codefendant were charged with attempted murder, second-degree assault, and third-degree assault on the theory that they had aided and abetted Yucca in the commission of those crimes. At their joint trial, the

---

[1] Yucca was referred to as "Yucca," "Shorty," and "Shooter" in the briefs and at various stages of this proceeding.

detective who interviewed defendant testified about the statements that defendant had made to him. The state also offered the testimony of the detective who interviewed codefendant. Defendant objected, arguing that, because codefendant did not testify, admitting his statements through the detective's testimony would violate defendant's confrontation right under the Sixth Amendment to the United States Constitution. The trial court allowed the detective to testify but ordered that any specific references to defendant by codefendant be redacted. The jury ultimately convicted both defendant and codefendant of the charged crimes.

■　On appeal, defendant raises five assignments of error, which we address in turn. In the first, he argues that the trial court erred in denying his MJOA on the third-degree assault charge. Defendant contends that there is no evidence in the record that he aided Yucca in assaulting the victim or had the requisite intent to do so.[2] We disagree. The statements that he made to the police indicate that he had agreed to go to the scene in order to fight. The jury could reasonably infer that defendant intended to aid Yucca and, in fact, did so by serving as backup at the scene.[3] The trial court correctly denied the MJOA.

■　In his second assignment of error, defendant renews his argument that admitting evidence of codefendant's statements violated his confrontation rights. He contends that, even with express references to his identity redacted, the jury could easily infer that the statements referred to him. Thus, he argues, the statements could not be admitted, given that

---

[2] He also makes an unpreserved argument that he could not be convicted of third-degree assault as an "aider" of the assault when his conduct did not cause any physical injury and was "necessarily incidental" to the crime. We reject that argument without further discussion. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (explaining purposes of preservation rule).

[3] We distinguish defendant's role of providing backup for Yucca from "mere presence" or "acquiescence," as described in *State ex rel Juv. Dept. v. Holloway*, 102 Or App 553, 557, 795 P2d 589 (1990), because, in this case, defendant's presence as backup actually encouraged Yucca: Yucca had found the men that he wanted to fight, but he was outnumbered, and rather than confront them alone, he returned to the vehicle where his friends were waiting. It was only after defendant agreed to accompany Yucca to fight the men that he had found that Yucca returned to the apartments and punched and shot the victim.

defendant did not have an opportunity to cross-examine codefendant.

We need not decide whether the court erred in admitting codefendant's statements, because, even assuming that it did, the error was harmless. We will affirm despite a federal constitutional error if, on the whole record, "the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986) (stating the federal standard for harmless error). In determining whether an error was harmless, we consider the importance of the improperly admitted evidence in the state's case, whether the evidence was cumulative, whether the evidence was corroborated by properly admitted evidence, and the overall strength of the state's case. *See State v. Cook*, 340 Or 530, 550, 135 P3d 260 (2006) (concluding that constitutional error was harmless beyond a reasonable doubt based on those factors).

Even assuming that the jury inferred that codefendant's statements referred to defendant, those statements indicated only that defendant accompanied Yucca to the apartment complex, that a fight and a shooting took place, that defendant and codefendant ran to codefendant's vehicle, and that, at defendant's urging, they waited 10 or 15 seconds for Yucca to rejoin them before they left. The state also introduced evidence of defendant's own statements to the police detective, which duplicated virtually everything that codefendant said, but in more detail. Defendant admitted all of the following: (1) he was present at the scene of the assaults and the shooting; (2) he travelled with Yucca to the apartment complex for the purpose of fighting; (3) he knew that Yucca had a pistol; (4) he initially waited for Yucca in the car; (5) Yucca returned to the car and said, "[L]et's go fight them"; (6) defendant agreed to do so; (7) he accompanied Yucca during the assault and shooting, and (8) he left the scene with Yucca.

The state also introduced testimony from Gongora, a resident of the apartment complex, who stated that he had observed defendant at the scene of the assault and had heard defendant tell Yucca to "shoot him," immediately before Yucca fired the pistol. In light of Gongora's testimony and

defendant's own statements, we conclude that codefendant's statements were not important to the prosecution's case and were cumulative of other properly admitted evidence. *See Cook*, 340 Or at 550. Thus, any error in admitting codefendant's statements was harmless beyond a reasonable doubt. Accordingly, we reject defendant's second assignment of error.

In his third assignment of error, defendant argues that the court erred in entering a judgment of conviction on the attempted murder charge, because the jury did not return a unanimous verdict on that charge. He concedes that he failed to preserve this error, but he argues that the trial court committed plain error. We disagree. Indeed, the court did not err at all: we have previously rejected defendant's arguments on the merits. *See State v. Jones*, 223 Or App 611, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009); *State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 815 (2008). We have also previously rejected the argument raised in defendant's final two assignments of error, namely, that the minimum sentences mandated by ORS 137.700 (Measure 11) do not apply to defendants convicted as accomplices under ORS 161.115. *See State v. Cobb*, 224 Or App 594, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009). We reject defendant's arguments here for the same reasons.

Affirmed.