Argued and submitted November 14, 2014, Roosevelt High School, Portland, reversed January 28, 2015

In the Matter of J. M. M.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

J. M. M.,
*Appellant.*

Douglas County Circuit Court
1200295;
Petition Number 13JU036;
A154011

342 P3d 1122

Angela Sherbo argued the cause and filed the brief for appellant.

Cecil A. Reniche-Smith, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

In this juvenile delinquency case, youth seeks reversal of a judgment finding him within the jurisdiction of the juvenile court for acts that, if committed by an adult, would constitute one count of first-degree theft, ORS 164.055, and one count of second-degree burglary, ORS 164.215. Youth argues that the evidence was insufficient to prove beyond a reasonable doubt that he aided and abetted any crime. We agree and reverse the judgment.

A church building was broken into, and several items of value were taken. Surveillance video showed four people outside the building between 10:00 p.m. and 11:00 p.m. on the night of the break-in. One of them was youth. The video showed the other individuals carrying items away from the church, but youth was not carrying anything. The state proceeded against youth on a theory of accomplice liability, and presented testimony from Officer Sheldon, who investigated the break-in and interviewed youth:

> "[SHELDON:] * * * [I]n my conversation with him I asked about the burglary. He knew about the burglary. He stated that he had been standing outside towards the back door of the place. That he actually did not want to be a part of the burglary but that he knew about the burglary and that he knew, you know, when they took the items away and everything. I advised him that because you did not report this, you did not walk away from it, you stayed there, you know, and I even used the term kind of like, 'Were you like a lookout?' And he kind of shook his head no. And I said, 'So kind of back watching out for us to see if we were coming?' And he goes 'noooo,' like that. And I go, 'But you were there?'

> "'Yes, I was there.'

> "'You knew about it. You knew about the planning of it, you know. By being there do you understand that that makes you a conspirator to the crime.'

> "And he goes, 'Yeah, I know.'

> "And so I felt that he was actually being very honest with me and up front to that point and so I told him, I said, 'Listen, I'm going to kind of reward you for this. I'm not tak[ing] you in,' because I knew he was on probation, and I

cited and released him at the scene, and, obviously, I had to contact [youth's probation officer] and let [him] know. And so that was done. But, anyway, he—and then I was able to support that through another statement that he did stay at the back door.

"[PROSECUTOR:]   Okay. And but he said he knew of the planning?

"[SHELDON:]   Yes.

"[PROSECUTOR:]   Did he say if he was there when they planned it?

"[SHELDON:]   Yes, they were all—all parties were together when they—and everybody kind of leaned towards Michael, the head person on this whole thing, the one that kind of thought it up * * *. So, but, yeah, all four of the kids were together when it was thought up.

"[PROSECUTOR:]   And at any time did [youth] say that he told him it wasn't a good idea, you shouldn't do it?

"[SHELDON:]   Not to my recollection, no.

"[PROSECUTOR:]   And he never once told you that he tried to—

"[SHELDON:]   No.

"[PROSECUTOR:]   —break away.

"[SHELDON:]   No. He stayed there until it was done, until they were done.

"[PROSECUTOR:]   And he never said that he was forced to be there in any way?

"[SHELDON:]   No.

"* * * * *

"[SHELDON:]   * * * I said, 'Do you understand this?' And [youth] said 'yes.' So that's, you know, I go, 'Do you understand this makes you part of the crime?' And he goes 'yes.'"

On cross-examination, Sheldon further testified:

"[DEFENSE COUNSEL:]   And you believed what [youth] said, though, too?

"[SHELDON:]   Yeah. I had no reason to doubt.

"[DEFENSE COUNSEL:]   Okay. And it was—his statements were corroborated by the rest of your investigation?

"[SHELDON:]   By one of the other individuals—

"[DEFENSE COUNSEL:]   Okay.

"[SHELDON:]   —that I took a statement from."

At the close of the state's case, and again in closing argument, youth moved for a judgment of acquittal, arguing that the evidence established only that youth knew about the planning of the crime and was present while the crime was committed, which was insufficient for liability. The juvenile court denied the motion and ruled as follows:

"Well, Officer Sheldon did clearly testify that [youth] was present and he told him that he was present at the planning. He clearly knew that this was going to happen, which he admitted, and although I appreciate [youth's] honesty that he knew it was going to happen, he didn't take any effort not to be there. It's not okay to say, well, I'm just going to stand outside while you guys burglarize this and I know we're all going to go and do this but I'm going to stand outside because I don't want to be part of it. That's not going to relieve one of one's responsibility when one is part of the planning, participates, goes there, stands outside, leaves with. All of that is on videotape. I believe that [youth] did, in fact, aid and abet in the theft and the burglary and I am going to find that he did commit those crimes."

On appeal, youth reprises his argument that the evidence was insufficient to establish his guilt beyond a reasonable doubt.

Youth requests that we review this appeal *de novo*, as we have the discretion to do in juvenile and other equitable proceedings. ORS 19.415(3)(b); ORAP 5.40(8)(a), (b). We exercise such discretion sparingly and only in exceptional cases. *Dept. of Human Services v. M. E. (A150359)*, 255 Or App 296, 298, 297 P3d 17 (2013). Youth has not identified a reason why this is an exceptional case, and we do not perceive one. Accordingly, we apply our ordinary standard of review, under which we are bound by the juvenile court's findings of fact if they are supported by evidence in the record, and we review the juvenile court's legal conclusions

for errors of law. *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010).

ORS 161.155 provides:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2)   With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b)   Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

The smallest degree of collusion between accomplices is sufficient for aiding-and-abetting liability. *State v. Moriarty*, 87 Or App 465, 468, 742 P2d 704, *rev den*, 304 Or 547 (1987) (explaining that "'the least degree of concert or collusion between the parties to an illegal transaction makes the act of one of them the act of all'" (quoting *State v. Stark,* 7 Or App 145, 152, 490 P2d 511 (1971))). On the other hand, evidence that the defendant was merely present, or acquiesced in others' conduct, is not enough. *Id.*; *State v. Schrag*, 21 Or App 655, 658, 536 P2d 461 (1975); *see also State ex rel Juv. Dept. v. Holloway*, 102 Or App 553, 557, 795 P2d 589 (1990) ("[M]ere presence at a crime is insufficient to establish aiding and abetting. Similarly, acquiescence alone is not sufficient to constitute aiding and abetting." (Citations omitted.)); *State v. Crawford*, 90 Or App 242, 752 P2d 316, *rev den*, 306 Or 195 (1988) (holding that, where a crime was planned "in the presence" of an individual and where that individual was present at the scene of the crime but testified that he was not a lookout and provided no help, in the absence of other evidence that that individual "actively planned or participated in the burglary," he or she was "only a witness, not an accomplice").

The juvenile court relied on evidence that youth was present when others formulated their plan to burglarize the church, that youth accompanied the other three individuals to the church, that youth did not make "any effort not to be there," that youth stood outside while the burglary occurred, and that youth left with the others, who were carrying the

items they stole from the church. That evidence is enough to establish that youth was present when the crime was planned, knew the crime would occur, and acquiesced in its commission. Our case law makes clear, however, that youth must have done more to be liable as an accomplice.

It appears that the juvenile court drew an inference—which the state also urges on appeal—that, because youth was present when the others formed their plan, he was a "participant" in the plan. As we stated in *Crawford*, however, youth's presence at the planning and commission of the crime, without more, makes him "only a witness, not an accomplice." 90 Or App at 246. In addition, the juvenile court's inference is inconsistent with the very testimony on which the juvenile court relied—that of Sheldon. According to Sheldon, youth admitted that he was present and "knew of the planning," but "actually did not want to be a part of the burglary." Sheldon further testified that youth's account was corroborated.

The juvenile court also noted that youth apparently made no "effort not to be there." Youth had no legal duty to refrain from being present at the scene, or to discourage the others from carrying out their plan to burglarize the church. The fact that youth was present establishes only that—his presence. Youth may be guilty of poor judgment, but the state did not prove him guilty of aiding and abetting a crime.

Reversed.