248 P.3d 10 (2011)
240 Or. App. 475
STATE of Oregon, Plaintiff-Respondent,
v.
Chet Michael WILSON, Defendant-Appellant.
07C50549; A140479.
Court of Appeals of Oregon.
Submitted July 29, 2010.
Decided February 2, 2011.
*11 Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.
John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.
Before HASELTON, Presiding Judge, and BREWER, Chief Judge, and ARMSTRONG, Judge.
HASELTON, P.J.
Defendant, who was convicted following a bench trial of second-degree theft, appeals. He assigns error to the trial court's determination that he committed second-degree theft by "Aiding or Abetting after the fact." In particular, defendant contends that, even viewing the evidence most favorably to the state, the theory on which the trial court expressly predicated his conviction was inapposite as a matter of law. We agree with defendant, and, accordingly, we reverse his conviction and remand for further proceedings.
On appeal from a judgment of conviction, we recount the facts in the light most favorable to the state. State v. Andrews, 174 Or.App. 354, 356, 27 P.3d 137 (2001), abrogated in part on other grounds by State v. Rutley, 202 Or.App. 639, 645, 123 P.3d 334 (2005), aff'd in part and rev'd in part, 343 Or. 368, 171 P.3d 361 (2007).[1] Early the morning of September 26, 2007, defendant and his friend, Down, drove to a Plaid Pantry in Salem, on their way to an outdoor party at a local quarry. Defendant, who was driving, backed his vehicle into a parking space on *12 the north end of the parking lot, near where some plastic soda and milk crates were stored. The back "hood" to defendant's trunk was open. Jeffers, the Plaid Pantry employee working that morning, thought that defendant's choice of parking spots was odd because there were plenty of parking spaces available immediately in front of the store.
At the Plaid Pantry, defendant and Down encountered Selvidge, a friend of theirs. Defendant and Down walked into the Plaid Pantry. Down "walk[ed] around" the store, acting "strangely" and "looking directly" at Jeffers. After a few moments, Down went back outside while defendant stayed to purchase beer. While defendant was still inside, Down loaded between 20 and 40 of the plastic crates into the back of defendant's vehicle.[2] About half an hour after defendant, Down, and Selvidge had left, Jeffers noticed that the crates were missing and called the police.
After leaving the Plaid Pantry, defendant, Down, and Selvidge proceeded to the quarry, where the party was taking place. There, Down unloaded the crates. Down burned a couple of the crates in a bonfire, but kicked most of them into some bushes. Defendant and some other people at the party also used a few of the crates for sitting on.
Salem Police Officer Ramirez, who had interviewed Jeffers at the Plaid Pantry about the theft, encountered defendant, Down, and Selvidge at the quarry about an hour later that same morning.[3] Defendant told Ramirez that he did not take the crates and that he did not know that Down had loaded the crates into his vehicle until after they arrived at the quarry. Selvidge confirmed that only Down had loaded the crates into defendant's vehicle.
Ultimately, the state charged defendant and Down with second-degree theft, ORS 164.045 (2007), amended by Or. Laws 2009, ch. 11, § 12; Or. Laws 2009, ch. 16, § 2.[4] Down pleaded guilty, and defendant opted for a trial to the court. After Jeffers, Ramirez, and Selvidge testified regarding the facts recounted above, Down testified that defendant did not know that he (Down) had stolen the crates and put them into defendant's vehicle. Defendant also testified, stating that he did not know about the crates until Down started unloading them at the quarry.
At the close of the evidence, the trial court directed the parties on how to frame their closing arguments:
"[H]ere's a question I want [the] lawyers to kind of focus on for me. There's kind of two issues as I see it. One * * * was the theft that clearly Mr. Down perpetrated, was that participated in by [defendant] at the outset, either directly or by his kind of passive consent; active or passive I guess. So that's the first one.
"And the second one is * * * whether or not [defendant] actively participated in the theft at the store; once he learned that those crates were in his trunk by, I guess, allowing Mr. Down to put them in the fire or use them for seats or throw them away, even though they were Mr. Down's, is that aiding and abetting such that it makes him guilty of the crime?"
The state responded by contending that defendant was guilty of the second-degree theft, pursuant to ORS 161.155(2)(b),[5] because *13 he "aid[ed] or abet[ted]" in Down's commission of the crime. In so arguing, the state contended that either defendant's conduct at the Plaid Pantry, e.g., parking on the north end of the Plaid Pantry parking lot near where the crates were stored, or defendant's conduct at the quarry, e.g., allowing the crates to be burned, was independently sufficient to establish his culpability.
Defendant countered that (a) there was reasonable doubt as to whether he had acted either as a principal or as an accomplice while at the Plaid Pantry and (b) defendant's conduct at the quarry, even if he acted at that point with knowledge that the crates were stolen, was legally insufficient to establish culpability for second-degree theft. In particular, in response to the trial court's question regarding defendant's possible accomplice liability based on his conduct at the quarry, defense counsel argued:
"[I]n [the] aid and abet statute, [ORS] 161.155, there's still that important element of intent. [Defendant] would have had to at least intend to help the other guys steal the crates. He has to have had the intent to promote or facilitate the commission of a crime.
"* * * * *
"There has to be a conscious objective to take and keep another person's property. [Defendant] just didn't have that conscious knowledge or objective. He learned about the theft, the crime that someone else committed, after the fact. He didn't help the crime and he didn't plan the crime."
(Emphasis added.)
The trial court, still focusing on defendant's conduct at the quarry, highlighted its concern by positing the following hypothetical:
"THE COURT: Okay. Let me ask you this question, though, and give you this fact pattern. * * *
"* * * * *
"* * * [A] friend of mine come[s] to me and say[s], `I just robbed a bank. Here's a bag of money. I think I'm going to get caught.' Or maybe he doesn't even say that. But he just walked up: `Here's a bag of money.' And I decide, even in good faith I say to myself, `I don't want to get caught with this stuff.' So I destroy it, I burn it. Okay?
"Haven't I now aided and abetted a bank robbery by permanently depriving the victim of that money? And I guess that's where I'm coming from is that* * * let's accept Mr. Down's testimony for the sake of this discussion that [defendant] had no idea that Mr. Down was putting those milk cartons in the back of his car; just flat didn't know it.
"* * * * *
"Once [defendant] gained that knowledge and he allowed and/or participated in the utilization of those milk cartons, whether it's burning them, throwing them over the side or using them as chairs, isn't that aiding and abetting?"
The following colloquy ensued:
"[DEFENSE COUNSEL]: Your Honor, I would say that it is not. * * *
"* * * * *
"There's a separate cause of action for that called theft by receiving that is defined in ORS 164.095. * * *
"I think that's probably kind of what the Court is getting at; that maybe [defendant] didn't steal the crates but he could have disposed of them, knowing that they were stolen. Well, for a couple of reasons we can't do that. * * *
"* * * * *
"So we really need to narrow our focus to whether [defendant] unlawfully and knowingly committed theft of crates, and not move into that other statute * * *. * * *
"* * * * *
"THE COURT: All right. I mean you're arguing that he didn't have knowledge that they were stolen. I mean how could he not know that Mr. Down put those in his car while they were down at *14 the store? I mean they clearly weren't Mr. Down's.
"[DEFENSE COUNSEL]: Well, I think that, yeah, he knew after the fact.
"THE COURT: Right.
"[DEFENSE COUNSEL]: I think you have to havefor theft you have to have had the kind of beforehand knowledge that is intent. * * *
"* * * * *
"THE COURT: Okay. All right. Let me ask the State; criminal liability for conduct of another person. * * *
"* * * * *
"* * * [S]o let's assume that the aiding and abetting * * * is frankly allowing the fruits of the crime, the crates, to be disposed of by burning them or throwing them away. But here's the question to the State. * * *
"* * * [O]nce [defendant] determined, knew that there were stolen crates in his car, how do I find the intent that by letting them be burned or thrown away that that is the intent to promote or facilitate the commission of the crime?
"[THE STATE]: * * * [T]he theft was for the bonfire. [Down] went, put the crates in the trunk and the theft was to bring those to be burned. So the theft did not end until they were burned in the fire. Once [defendant] knew that [the crates] were in [the trunk] and had knowledge that they were in there, he then made it easier for the commission of the crime because he allowed Mr. Down to take [the crates] out of his car and put them in the fire.

"* * * * *
"THE COURT: Hang on. Okay. Let me ask this. Let me put myself in [defendant's] situation that I'm driving a car and I have absolutely no idea that my friend has committed a crime. * * * [L]et's say we go into a store and my buddy steals a Snickers bar and I don't know it. But I know he didn't buy or pay for anything in the store and I know he didn't have a Snickers bar before we went into the store.
"So we get out to my house or wherever we're going. My buddy gets out and out of his pocket he pulls this Snickers bar, opens it up and starts eating it. Okay. Do I have any duty at any point to stop him?
"[THE STATE]: No, Your Honor. But that can be distinguished from the present case because that theft was taking that Snickers bar out of the store. This theft continued until the crates were burned because this theft was for the commission of theft to burn them. * * *
"THE COURT: Okay. How about if my buddy shares the Snickers bar with me and I eat half of it?
"[THE STATE]: If you eat half of that I would say that would more than likely be a
"THE COURT: Aiding and abetting? Okay."

(Emphasis added.)
In sum, in the colloquy with the court, defense counsel explicitly informed the court that, if it found that defendant was unaware that Down had taken the crates until after leaving the Plaid Pantry, then: (1) as a matter of law, defendant could not be convicted under ORS 164.045 (2007) as an accomplice to Down's theft; and (2) rather, defendant's conduct at the quarry would, at most, implicate theft by receiving, ORS 164.095but that was inapposite because defendant had not been charged under that statute.[6]
The trial court took the matter under advisement and ultimately found defendant *15 guilty of second-degree theft based on its determination that defendant's "conduct constitut[ed] Aiding or Abetting after the fact." (Emphasis added.) In its letter opinion announcing and explaining its conclusion, the trial court noted that defendant denied any knowledge of Down's conduct or that the crates were in his vehicle until he arrived at the quarry but that, "[t]hereafter, the crates were disposed of, either by burning or possibly throwing some away over the embankment," and that "[d]efendant was aware that the crates were being burned or otherwise disposed of * * *." The trial court subsequently entered a judgment of conviction for second-degree theft.
On appeal, defendant contends that the trial court erred in convicting him of second-degree theft on the theory that his conduct constituted "[a]iding or [a]betting after the fact" because "[a]iding or [a]betting after the fact" is not, in fact, a crime. We do not understand defendant to dispute that there is sufficient evidence from which the trial court could have found, by reasonable circumstantial inferences, that defendant had acted in intentional concert with Down at the Plaid Pantry to facilitate the theft[7] and, thus, was culpable as an accomplice to second-degree theft under ORS 164.045 (2007). Rather, defendant's essential contention is that the trial court did not convict him on that basis but, instead, expressly convicted him on a theory of culpability that is legally erroneous.
The state, on appeal, does not dispute that accomplice liability under ORS 161.155(2)(b) cannot be based on "aiding and abetting after the fact." Thus, we do not understand the state to assert that defendant could properly be convicted as an accomplice to a theft under ORS 164.045 (2007) based solely on his knowledge and conduct after arriving at the quarry. Instead, the state's sole response is that defendant's present contention is unpreserved. Specifically, the state posits: (1) "[a]lthough the trial court used the phrase `Aiding or Abetting after the fact,' * * * [its] comments during colloquy with the parties indicated that the court was considering whether defendant was guilty on a theft-by-receiving theory"; (2) defendant had ample opportunity to object, or seek clarification, between the time the court issued its letter opinion and when judgment was entered; and (3) consequently, the asserted error is not preserved and is not cognizable as an "error of law apparent on the record," ORAP 5.45(1).
For the reasons that follow, we conclude that defendant did, in fact, preserve his essential contentions on appeal and that the trial court erred in convicting defendant on the theory that his conduct at the quarry constituted "[a]iding or [a]betting after the fact." Accordingly, we reverse defendant's conviction for second-degree theft and remand for a new trial.
We begin with preservation. In Peeples v. Lampert, 345 Or. 209, 219-20, 191 P.3d 637 (2008), the Supreme Court most cogently summarized the prudential and pragmatic considerations that underlie and inform the application of that requirement:
"Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise. Finally, preservation fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it."
(Internal citations omitted.) Consistently with those policies, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." State v. Wyatt, 331 Or. 335, 343, 15 P.3d 22 (2000).
*16 Here, the requisites of preservation were fully satisfied. As noted, in colloquy during closing argument, 240 Or.App. at 480-82, 248 P.3d at 13-14, the trial court advancedand defense counsel patently disputedthe same "aid and abet after the fact" premise on which the trial court ultimately expressly predicated its determination of guilt: "Based on the evidence presented, I find * * * Defendant guilty of Theft in the Second degree on the basis that his conduct constitutes Aiding or Abetting after the fact." (Emphasis added.)[8]
Thus, defense counsel, in closing argument, explicitly and specifically identified the legal error on which the trial court's ultimate determination of guilt was predicated. See State v. Schodrow, 187 Or.App. 224, 227, 66 P.3d 547 (2003) (the defendant preserved disputed legal issue for appellate review in a bench trial by raising and obtaining a ruling on that issue in closing arguments); Andrews, 174 Or.App. at 359, 27 P.3d 137 (same); accord Fowler v. Cooley, 239 Or.App. 338, 347 n. 4, 245 P.3d 155 (2010) (assignment of error not reviewable even though issue raised in closing argument because the defendant was unable to show that trial court's verdict was predicated on purported error). Consequently, the trial court and the state were both fairly alerted to defendant's present contention, and the record was fairly developed. See Peeples, 345 Or. at 219-20, 191 P.3d 637.
The state nonetheless asserts that, after the trial court issued its letter opinion, defendant was obligated to (1) inform the trial court that any reliance on "Aiding or Abetting after the fact" was legally erroneous and (2) seek clarification as to whether the court was relying on "Aiding or Abetting after the fact" as opposed to theft by receiving. We disagree.
First, with respect to the trial court's explicit reliance on "Aiding or Abetting after the fact," defendant had no obligation to reiterate his previous objections before entry of judgment. To be sure, we have, on occasion, held that a party's failure to alert the trial court, before entry of judgment, to a purported error in a letter opinion precludes appellate review of that error. See, e.g., McDougal v. Griffith, 156 Or.App. 83, 86-87, 964 P.2d 1135 (1998), rev. den., 328 Or. 330, 987 P.2d 508 (1999). However, consistently with principles of preservation, we have never imposed such a requirement where the appealing party had previously fairly alerted the trial court to the purported errorand we will not do so here.
Second, the state's argument with respect to clarification of "Aiding or Abetting after the fact" assumes an obligation to clarify the unambiguous. Again, the trial court explicitly and exclusively identified the basis for the conviction as "Aiding or Abetting after the fact." The letter opinion made no reference to theft by receiving. Defense counsel was under no obligation to invite the trial court to consider alternative theories of conviction.
We proceed to the merits: Did the trial court err in convicting defendant on the theory that he "Aid[ed] or Abett[ed] after the fact" in the second-degree theft?
ORS 161.155 provides, in part:
"A person is criminally liable for the conduct of another person constituting a crime if:
"* * * * *
"(2) With the intent to promote or facilitate the commission of the crime the person:
"* * * * *
"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"
(Emphasis added.) The pertinent crime, second-degree theft, ORS 164.045 (2007), incorporates the definition of theft set out in ORS 164.015. See 240 Or.App. at 478 n. 4, 248 P.3d at 12 n. 4. As relevant here, ORS 164.015(1) provides that "[a] person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person * * * *17 [t]akes, appropriates, obtains or withholds such property from an owner thereof[.]" Thus, to be liable for aiding and abetting Down in his "tak[ing], appropriat[ing], obtain[ing,] or withhold[ing]" the crates from their rightful owner, defendant must have aided or abetted Down in the "planning or commi[ssion]" of that offense.
Here, the trial court apparently believed that, by "allowing the fruits of the crime, the crates, to be disposed of by burning them or throwing them away," defendant "aided or abetted" in the commission of the theft. However, contrary to the trial court's understanding, that conduct does not constitute aiding or abetting Down's theft because, by the time the crates were burned or otherwise disposed of at the quarry, Down had already completed the commission of the predicate offense. See State v. Spears, 223 Or.App. 675, 699, 196 P.3d 1037 (2008) (defining degree of asportation required to commit theft by taking).
That conclusion comports with our decisions that have, with varying degrees of specificity, addressed whether aiding and abetting liability could be imposed based on a defendant's conduct after the commission of a principal offense. State v. Watts, 60 Or. App. 217, 653 P.2d 560 (1982), rev. den., 294 Or. 536, 660 P.2d 682 (1983), is exemplary. There, the defendant was charged with the theft of some dune cycles and the issue was whether his brother was "an accomplice" for purposes of ORS 136.440, the "accomplice testimony corroboration" requirement.[9] The stipulated evidence established that, although the brother ended up storing the cycles at his house after learning that the defendant had stolen them, he did not know that the defendant planned to take the cycles prior to his doing so. Watts, 60 Or.App. at 221, 653 P.2d 560. Based on those facts, the trial court determined that the brother was not an "accomplice" and, consequently, denied the defendant's motion for judgment of acquittal.
We affirmed. In so holding, we emphasized that "it is clear that [the brother's] subsequent receipt of the cycles * * * did not aid [the] defendant in taking them" and that the brother's action "was not done with `the intent to promote or facilitate the commission of' [the] defendant's taking the cycles." Id. at 221, 653 P.2d 560 (emphasis in original). See also State v. McDonnell, 98 Or.App. 134, 138-39, 778 P.2d 978, rev. den., 308 Or. 660, 784 P.2d 1102 (1989) (concluding that, for purposes of establishing whether corroboration was required to substantiate a witness's testimony, the witness did not aid and abet the burglary or theft because there was no evidence that the witness "planned or participated" in those crimes and because the crimes "were completed" by the time the witness got involved); cf. State v. Hoygaard, 59 Or.App. 473, 475, 651 P.2d 168 (1982) (holding that the defendant's conduct of "gutting and dressing" a stolen deer could not sustain her conviction for "aiding" in the hunting of that deer).
Consistently with that reasoning, although "actions after the commission of a crime * * * may be used as evidence that earlier activities were aiding and abetting," those actions "cannot alone constitute aiding or abetting." State v. Moriarty, 87 Or.App. 465, 468 n. 1, 742 P.2d 704, rev den, 304 Or. 547, 747 P.2d 998 (1987) (emphasis in original). Indeed, the principle that a person cannot be held liable for "aiding and abetting" based solely on conduct that occurs after the commission of the predicate offense is long established, predating the adoption of ORS 161.155. See, e.g., State v. Rosser, 162 Or. 293, 344, 91 P.2d 295 (1939) ("The words `aid and abet' as used in [Oregon Code, title XIII, ch. 7, § 13-724 (1930), precursor to ORS 161.155,] * * * manifestly have reference to some word or act of encouragement or assistance in the commission of the offense, and not to something done after the crime is complete." (Emphasis added.)); see also Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 13, 13 (July 1970) (noting that the commission opted to "retain[ ] the common law verb `abets' *18 * * * because the word has been well defined by the courts" and citing Rosser).
Based on the foregoing, we conclude that the trial court erred when it convicted defendant of second-degree theft for his conduct of "Aiding or Abetting after the fact." Most simply, as defendant puts it, "under Oregon law, aiding and abetting after the fact is not a crime." Thus, the trial court's determination of guilt depended on an erroneous understanding of the applicable law.
The question of our disposition remains. Here, as noted, 240 Or.App. at 477-79, 248 P.3d at 11-12, there is evidence on which, depending on the trial court's determination of (as yet) unresolved factual issues, the court could properly convict defendant of the charged offense. In that respect, this case is in a procedural posture directly analogous to that in Andrews. Accordingly, as in Andrews, we reverse and remand for further proceedings.
Reversed and remanded.
NOTES
[1] For reasons that will become apparent, our citation to Andrews is not casual. Here, as in Andrews, the judgment of conviction, following a bench trial, explicitly rested on a legal premise that defense counsel had specifically disputed in argument to the court.
[2] Defendant stipulated that the crates were collectively worth more than $50.
[3] Ramirez had been called to investigate a complaint about minors drinking at the quarry.
[4] ORS 164.045 (2007) provided:

"(1) A person commits the crime of theft in the second degree if, by other than extortion, the person:
"(a) Commits theft as defined in ORS 164.015; and
"(b) The total value of the property in a single or aggregate transaction is $50 or more but is under $200 in a case of theft by receiving and under $750 in any other case.
"(2) Theft in the second degree is a Class A misdemeanor."
ORS 164.015 provides, in relevant part, "A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person * * * [t]akes, appropriates, obtains or withholds such property from an owner thereof[.]"
[5] ORS 161.155 provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:
"* * * * *
"(2) With the intent to promote or facilitate the commission of the crime the person * * *
"* * * * *
"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"
[6] Defense counsel appears to have been mistaken on the latter point. As noted, ORS 164.045 (2007), the second-degree theft statute defendant was charged under, references ORS 164.015 for the definition of theft. See 240 Or.App. at 478 n. 4, 248 P.3d at 12 n. 4. Theft by receiving, as set out at ORS 164.095, is included within that general definition. See ORS 164.015(5) ("A person commits theft when [with the requisite intent] * * * the person * * * [c]ommits theft by receiving as provided in ORS 164.095."). See generally State v. Cox, 336 Or. 284, 293, 82 P.3d 619 (2003) (concluding that ORS 164.025, which provides that theft under ORS 164.015 constitutes a single offense, permits a prosecutor to proceed on any of the theories of theft set out in ORS 164.015, except theft by extortion, even where a different theory of theft under ORS 164.015 is charged).
[7] E.g., by backing into a parking spot near the crates with the trunk of his vehicle open and by remaining in the store, interacting with the clerk, after Down had left and as Down was loading the crates into defendant's vehicle.
[8] As noted, in colloquy, defense counsel further informed the trial court that defendant's conduct, on which the court was focusing, could, at most, implicate theft by receivingand then explained that a conviction on that basis was not legally available. See 240 Or.App. at 841, 248 P.3d at 13-14. But see 240 Or.App. at 483 n. 6, 248 P.3d at 14 n. 6.
[9] ORS 136.440 provides, in part, that "[a] conviction cannot be had upon the testimony of an accomplice [as defined by ORS 161.155 and other law] unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense."