Argued and submitted April 29, 2010, defendant's conviction for assault in the first degree reversed; remanded for further proceedings; otherwise affirmed February 16, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CLIFTON CORY BURGESS,
*Defendant-Appellant.*

Washington County Circuit Court
C080070CR; A139500

251 P3d 765

642

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Kristen G. Williams, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, who was convicted of first-degree assault, ORS 163.185, appeals, raising three assignments of error. We write to address only defendant's first assignment, which challenges the trial court's denial of his motion for judgment of acquittal (MJOA). As amplified below, we conclude that (a) the evidence was legally insufficient to support defendant's conviction on the sole theory that the state argued to the jury, *viz.*, that defendant was liable for aiding and abetting a first-degree assault perpetrated by another person; and (b) in the circumstances of this case, defendant's conviction cannot be affirmed on a theory of principal liability that was never litigated or presented to the jury. Accordingly, we reverse defendant's conviction for first-degree assault and remand for further proceedings.[1]

In reviewing the denial of an MJOA, we view the facts and reasonable attendant inferences in the light most favorable to the state. *See State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Consistently with that standard, the facts material to our review are as follows: On New Year's Eve 2007, defendant, Nicholas Cufaude, and the victim were all guests at a party. All three were intoxicated, and the host provided methamphetamine to all three. Thereafter, when the host and the victim became involved in a physical confrontation, Cufaude intervened and knocked the victim down with one or two punches. Cufaude, who was wearing steel-toed boots, then kicked the victim three or four times in the face, "like somebody kicking a football." A bystander intervened to pull Cufaude away from the victim, who was unconscious. Cufaude then walked away.

Defendant and the victim had a hostile relationship. As Cufaude assaulted the victim, defendant stood nearby, without participating. Approximately a minute and a half

---

[1] The basis for that disposition is explained below. 240 Or App at 654-55.

Our disposition obviates any consideration of defendant's two other assignments of error, which pertained, respectively, to (a) the imposition of a Ballot Measure 11 sentence for a conviction predicated on accomplice liability, *but see State v. Cobb*, 224 Or App 594, 597-98, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009); and (b) the validity of a felony conviction predicated on a nonunanimous jury verdict, *but see id.* at 596-97.

after Cufaude had been pulled away, defendant approached the victim, who was lying face up, and "stomped" him on the chest "a couple of times." Defendant then rolled the victim over, so that he was face down, grabbed his hair, and then "pile-drived" or "slammed" the victim's face into the muddy ground several times, saying, "Don't ever disrespect me again." Finally, and before stopping, defendant punched the victim in the face several times in the same area where the victim had been kicked by Cufaude. After bystanders carried the victim away for medical care, defendant and Cufaude "high-fived," congratulating each other. There was, however, no evidence that defendant and Cufaude had jointly planned or otherwise coordinated their conduct.

The victim suffered, among other injuries, a fractured right eye socket, which required reconstructive surgery, several other facial fractures, including to his jaw, and a lacerated arterial vein in his left temple. Ultimately, at trial, no expert medical testimony was presented relating or apportioning those injuries, or their degree or severity, to Cufaude's and defendant's respective conduct.

Defendant and Cufaude were both charged with, *inter alia*, first-degree assault. ORS 163.185.[2] The indictment charging defendant alleged, without elaboration, that defendant "did unlawfully and intentionally cause serious physical injury to [the victim] by means of a dangerous weapon," without referring to either principal or accomplice liability. Although Cufaude waived a jury, and defendant did not, the two were tried jointly; thus, defendant was tried before a jury while Cufaude was tried simultaneously before the court.

In opening statement, the prosecutor propounded the state's exclusive contention that defendant was guilty of first-degree assault by reason of having aided and abetted Cufaude's assault on the victim. Specifically: (1) Cufaude, as

---

[2] ORS 163.185 provides, in part:

"(1) A person commits the crime of assault in the first degree if the person:

"(a) Intentionally causes serious physical injury to another by means of a deadly or dangerous weapon[.]"

Defendant was also charged with one count of third-degree assault, which the state dismissed, and one count of unauthorized use of a weapon, on which the jury acquitted defendant.

principal, had employed a "dangerous weapon," his steel-toed boots—"[i]n this case the weapons are the steel-toed work boots that Mr. Cufaude was wearing"—to inflict "serious physical injuries" to the victim; and (2) defendant, through his own conduct, had aided and abetted that assault by "compound[ing]" the injuries that Cufaude had inflicted.[3] The state did not contend that defendant could be alternatively and independently liable for first-degree assault as a principal—and, particularly, did not identify any "dangerous weapon" other than Cufaude's steel-toed boots.

At the close of the state's case, defendant moved for a judgment of acquittal, contending, in part, that the only dangerous weapon in the case was Cufaude's steel-toed boots and that the state had failed to establish a legally cognizable connection between those boots and defendant, in that defendant's conduct with respect to the victim "was subsequent to, not in conjunction with, Mr. Cufaude." In that regard, defense counsel emphasized that "there is really no evidence that the two were colluding on this" and that "what we have according to the state's evidence at this point is sequential events." Defense counsel concluded, "[T]hey must tie him in through an aiding and abetting theory to Mr. Cufaude, but they've failed to do so."

In opposing the MJOA, the state adhered to, and reiterated, its aid-and-abet theory against defendant:

"In the light most favorable to the state, the first defendant, Mr. Cufaude, used a dangerous weapon, which if the court has felt those, they weigh about five pounds each, to kick in the face of the victim. His intent was to seriously injure the victim.

---

[3] The prosecutor referred in detail to principles of accessory liability, including paraphrasing ORS 161.155, which provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

"The question for the court is in the light most favorable to the state did an act on the part of [defendant] further that injury, further that goal on the part of the codefendant and it absolutely did, because he went for the same place. He's taken his fist and pound[ed] him in the face, turning his head over and slamming it into the ground and that clearly, by an act, made easier the commission, furthered the commission, of the injury caused by Mr. Cufaude."

The state did not contend that, regardless of the sufficiency of the evidence as to accessory liability, the evidence was alternatively sufficient to establish defendant's independent culpability as a principal for first-degree assault.

The trial court denied the motion. In so ruling, the court noted that "the boots can be considered a dangerous weapon" and that, viewing the evidence most favorably to the state, there was a triable issue of fact for the jury as to "whether or not there was aiding and abetting."

In closing argument to the jury, as throughout the case, the state relied solely on a theory of accomplice liability. Again, the prosecutor referred to Cufaude's boots—and only those boots—as the referent and requisite "dangerous weapon." Again, as in opening statement, the prosecutor referred at length to principles of accomplice liability.[4] Again, there was no suggestion that defendant could be independently culpable, as a principal, for first-degree assault.[5]

---

[4] The essence of the prosecutor's argument was as follows:

"A person aids and abets another person in the commission of the crime if the person with intent to promote or make easier the commission of the crime assists by act the commission of the crime.

"* * * [T]he intent that Mr. Cufaude has is to injure the victim. When [defendant] steps in and punches the victim in the place, the same place where he's been kicked, takes his head, turns him over and slams it into the ground, did that further the injury or the intent to injure that Mr. Cufaude had?

"* * * * *

"You can assist by act. In this case, is [defendant] helping [Cufaude] to injure [the victim]? He thinks he is. He's punching him in the face. He's saying, 'Don't ever disrespect me again.' He's turning him over. Is that furthering the injuries caused by Mr. Cufaude? Absolutely. It didn't make him better. It didn't make him the same. It made him worse."

[5] The state did argue that, if the jury acquitted defendant of first-degree assault, it could nevertheless convict him of either second-degree assault or fourth-degree assault, as alternative lesser-included offenses, and the court ultimately so instructed the jury. Although it is patent that the state's theory of the case with

The jury, which received standard instructions on accomplice liability, convicted defendant of first-degree assault, and the court imposed a Ballot Measure 11-prescribed sentence of 90 months' imprisonment, with three years of post-prison supervision.[6]

On appeal, defendant, reiterating his arguments before the trial court, contends that the court erred in denying his MJOA. The gravamen of defendant's position is that Cufaude's assault on the victim, involving the use of a dangerous weapon, was completed before defendant had any physical contact with the victim and, consequently, in the absence of any evidence of cooperative or concerted action, he cannot be deemed to have aided and abetted that already completed first-degree assault. Defendant contends that we should remand with instructions to the trial court to enter a judgment of acquittal on Count 1 or, failing that, we should vacate defendant's conviction and remand for a new trial.

The state, as respondent, does not attempt to dispute defendant's contention that the evidence was legally insufficient to establish accomplice liability. Rather, the state asserts that the denial of the MJOA must be sustained because there was sufficient evidence to support defendant's conviction, albeit on a theory that the state never presented in the trial court—*viz.*, that defendant could be liable as a *principal* with respect to his own *seriatim* first-degree assault on the victim. Specifically, the state posits, for the first time, that (1) by analogy to *State v. Reed*, 101 Or App 277, 279, 790 P2d 551, *rev den*, 310 Or 195 (1990) (concrete sidewalk was a "dangerous weapon" when the defendant struck the victim's head against it), the muddy ground into which defendant "pile-drived" the victim's head was a "dangerous weapon"; and (2) a trier of fact could reasonably infer

---

respect to first-degree assault was predicated solely on accomplice liability, the prosecutor's comments in closing argument appear to suggest to the jury that it could convict on either of the proffered lesser-included offenses—that is, second-degree assault or fourth-degree assault—on the basis of either principal or accomplice liability. Thus—and critically with respect to our disposition and ultimate scope of remand, *see* 240 Or App at 651-55—as to the putative lesser-included offenses that the jury never reached and considered, the prosecution was not predicated solely on accomplice liability.

[6] The court convicted Cufaude of first-degree assault and unlawful use of a weapon.

that the victim had suffered serious physical injuries as a result of defendant's use of that "dangerous weapon." The state emphasizes that the indictment was broadly worded, without reference to accomplice liability, and that the trial court, albeit instructing the jury on accomplice liability, did not explicitly inform the jury that it could convict only on that theory. Given those circumstances, the state concludes, "as long as sufficient evidence existed to convict defendant as *either* the principal *or* an accomplice, the conviction must stand." (Emphasis in original.)

Finally, and alternatively, the state posits that, even if we do not affirm defendant's conviction for first-degree assault, we should, nevertheless, "reform the conviction to one for second-degree assault." In that regard, the state asserts:

> "If the evidence was insufficient to establish that defendant intentionally inflicted the serious physical injury *by means of a deadly or dangerous weapon*, it nonetheless sufficed to establish that defendant intentionally inflicted serious physical injury on the victim, making him guilty of second-degree assault pursuant to ORS 163.175(1)(a)."

(Emphasis in original.)

Defendant remonstrates that the state's newly minted theory of principal liability on first-degree assault comes much too late—and, indeed, to affirm defendant's conviction on a qualitatively different theory of the case that was never presented to the jury, that was presumably never considered by the jury, and that is predicated on facts that were not necessarily found by the jury, would violate principles of fundamental fairness. In that regard, defendant asserts that, if the state had invoked a theory of principal liability with respect to first-degree assault, rather than relying exclusively on accomplice liability, the case may very well have been litigated differently, with the record as to certain matters developed very differently:

> "For example, defendant did not have the opportunity nor any reason to develop the factual record regarding whether the actual muddy ground conditions *could* have constituted a dangerous weapon. Nor did he seek to develop the medical evidence regarding the degree of likelihood, if any, that a

serious physical injury suffered by the victim was caused by his use of the muddy ground rather than the codefendant's steel-toed boots—a critical issue under the state's new theory. The development of such issues could have led to both legal and factual challenges to the state's theory that defendant could have raised by motion before the court, and argued to the jury had the motion failed."[7]

(Footnote omitted; emphasis in original.)

As amplified below, we agree with defendant that, as the state does not dispute, the evidence was legally insufficient to support a conviction of defendant as an accomplice to Cufaude's first-degree assault. We further agree with defendant that, in the circumstances of this case, it would be fundamentally unfair to sustain the denial of the MJOA—and, consequently, to affirm defendant's conviction—based on a qualitatively different theory of culpability that was never litigated in the trial court and is predicated on facts that the jury did not necessarily determine in rendering its verdict. Finally, we conclude that, given the idiosyncratic procedural posture, the appropriate disposition is neither (as defendant principally urges) to direct the trial court to enter a judgment of acquittal on Count 1, nor (as the state urges) to direct entry of a judgment of conviction for first-degree assault. The former would preclude further proceedings with respect to the purported lesser-included offenses that were properly submitted to the jury; the latter assumes facts not necessarily found by the jury. Accordingly—and consistently with defendant's alternative suggested disposition—we vacate defendant's conviction and remand for further proceedings.

■ We begin with the legal insufficiency of evidence to establish accomplice liability for first-degree assault. As noted, under ORS 163.185, a person commits first-degree assault if the person "[i]ntentionally causes serious physical injury to another by means of a deadly or dangerous weapon." A person may be culpable for that conduct as an

---

[7] Defendant also posits that, if the state had, in fact, advanced alternative theories of principal and accomplice liability for first-degree assault in his jury trial, that would have implicated the jury concurrence concerns addressed in *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), and its progeny. Defendant reasons that the state "should not be permitted to rely on an additional theory on appeal that would have created just such a [jury nonconcurrence] problem if presented below."

accomplice if "[w]ith the intent to *promote or facilitate* the commission of the crime the person * * * [a]ids or abets or agrees or attempts to aid or abet such other person in *planning or committing* the crime[.]" ORS 161.155(2)(b) (emphasis added). Thus, to be culpable as an accomplice to Cufaude's use of the steel-toed boots, defendant must have "[a]id[ed] or abet[ted]" Cufaude in the "planning or commi[ssion]" of the assault with the boots "[w]ith the intent to promote or facilitate the commission of the crime."

■   Although "the least degree of concert or collusion between accomplices suffices" to establish culpability as an aider or abettor, mere presence or acquiescence alone are not sufficient. *State ex rel Juv. Dept. v. Holloway*, 102 Or App 553, 557, 795 P2d 589 (1990). *See also State v. Lavadores*, 230 Or App 163, 171, 214 P3d 86 (2009) (relying on *Holloway*); *State v. Anlauf*, 164 Or App 672, 674, 995 P2d 547 (2000) (same). Additionally, as we have recently reiterated, although " 'actions *after* the commission of a crime * * * may be used as evidence that earlier activities were aiding and abetting,' those actions 'cannot alone constitute aiding or abetting.' " *State v. Wilson*, 240 Or App 475, 488, 248 P3d 10 (2011) (quoting *State v. Moriarty*, 87 Or App 465, 468 n 1, 742 P2d 704, *rev den*, 304 Or 547 (1987) (emphasis in *Moriarty*)).

The facts in *Anlauf* are analogous to those in this case. There, the defendant and his accomplice, Scheidemantel, assaulted a 14-year-old boy with their fists and beer bottles. 164 Or App at 674. Toward the end of the assault, Scheidemantel threatened the boy with a knife that he had in his pocket. *Id*. There was no evidence that the defendant participated in Scheidemantel's conduct with the knife or even knew that Scheidemantel was carrying the knife. *Id*. Among other crimes, the defendant was charged with the unlawful use of a weapon for the knife on a theory of accomplice liability and, after the trial court denied his motion for judgment of acquittal, he was ultimately convicted on that charge. *Id*.

On appeal, the defendant asserted that, although he participated in the assault on the boy, there was no evidence that he aided or abetted in Scheidemantel's planning or commission of the unlawful use of the knife. *Id*. at 675. We

agreed, and, in so holding, we noted that, although the defendant and Scheidemantel both assaulted the victim "during the course of the common criminal episode * * *[,] [t]here was nothing to link [the] defendant to the knife offense here except his 'mere presence' when it occurred." *Id.* at 678-79.

So too here. Although defendant assaulted the victim about a minute and a half after Cufaude had broken off his assault, there is nothing—aside from defendant's "mere presence" when Cufaude was kicking the victim—to establish that Cufaude's conduct and defendant's conduct constituted anything more than uncoordinated, *seriatim* assaults. Absent some evidence of collusion or concerted action between Cufaude and defendant, defendant's actions *after* Cufaude's commission of the predicate first-degree assault cannot be used to hold defendant culpable for aiding and abetting that offense. *See Wilson,* 240 Or App at 488.

■ We proceed to the state's proffered alternative basis for sustaining the denial of the MJOA—*viz.,* that, regardless of the sufficiency of the evidence of accomplice liability, the record included evidence that, viewed most favorably to the state, would have permitted the imposition of principal liability for first-degree assault.

In the totality of the circumstances of this case, our affirmance of defendant's conviction on the basis that the state advances—*viz.,* that defendant's use of the muddy ground made it a "dangerous weapon" for the purposes of establishing his culpability as a principal for first-degree assault—would be fundamentally unfair. Here, as noted, the state's exclusive theory of culpability for first-degree assault—as articulated in opening statement, in opposing defendant's MJOA, and in closing argument—was that defendant aided and abetted Cufaude's assault of the victim and that Cufaude's steel-toed boots were the predicate "dangerous weapon." There was no suggestion that defendant could be liable as a principal for first-degree assault.

It is axiomatic that principal liability and accomplice liability are qualitatively different theories that implicate materially different operative facts. *See generally State v. Burney,* 191 Or App 227, 234, 82 P3d 164 (2003), *rev den,* 337 Or 182 (2004) (noting the "existence of different substantive

requirements of proof between charges based on direct liability and those based on vicarious criminal liability"). Accordingly, the record might very well have developed differently if the state had ever advanced and attempted to prove an alternative theory that defendant had acted as a principal in committing the first-degree assault. In particular, as defendant notes, because the state never suggested that defendant had employed the muddy ground as a "deadly or dangerous weapon," defendant had no reason to adduce evidence as to the condition, including pliancy, of the ground on that New Year's Eve night. Nor, in a related sense, did the state adduce proof pertaining to the nature and severity of the victim's injuries caused by the use of that "weapon," as opposed to defendant's other conduct (*e.g.*, punching the victim in the face). Consequently, the jury had no reason or occasion to consider any of those matters, much less render a verdict on that basis. We will not usurp the jury's constitutionally exclusive function by deciding those never-litigated factual matters in the first instance.

Our reticence in that regard broadly comports with the principles underlying our analysis and disposition in *State v. Barrie*, 227 Or App 378, 206 P3d 256 (2009). In *Barrie*, the defendant had been charged with second-degree manslaughter, and the trial court, following a bench trial, acquitted him of that charge but nevertheless convicted him of the lesser-included offense of criminally negligent homicide. *Id.* at 380. The court did so notwithstanding that

> "(1) neither party had requested that the lesser-included offense be considered; (2) the prosecutor had expressly eschewed pursuit of the lesser-included offense; and (3) the record demonstrates that defendant had no actual notice of the court's consideration of the lesser-included offense before the court rendered its oral verdict."

*Id.*

We reversed, concluding that that "confluence of factors," with the defendant's consequent lack of "actual notice that the lesser-included offense was under consideration," rendered the defendant's conviction irreconcilable with

"overriding principles of due process." *Id.* at 384. In so holding, we emphasized that "[a]t no point in the record did defendant or the prosecutor argue, or the court suggest, that the lesser-included offense, which involved a different mental state, was or should have been under consideration." *Id.*

We appreciate that the circumstances in *Barrie* differed in some significant respects from those presented here. For example, unlike in *Barrie*, the prosecutor here never explicitly disavowed the basis on which the state now seeks affirmance. Nevertheless, as a *practical* matter—as a matter of "actual notice" and how cases are actually tried (and defended)—the same "overriding principles of due process," *id.* at 384, still pertain and compel a reversal of defendant's conviction.

*State v. Goddard*, 178 Or App 538, 37 P3d 1046, *rev den*, 334 Or 121 (2002), which the state invokes, is not to the contrary. There, although we affirmed the defendant's conviction on an alternative basis, that alternative basis was predicated on facts *necessarily* found by the jury, which the defendant had fair opportunity to contest.

In *Goddard*, the defendant was convicted, following a jury trial, of first-degree sodomy and endangering the welfare of a minor. *Id.* at 540. The issue was whether the trial court had erred in denying the defendant's motion for judgment of acquittal on the endangering charge. *Id.* Before the trial court, the state had argued that the defendant had endangered the welfare of the child victim by allowing the child to "witness an act of sexual conduct" in a pornographic video before engaging her in an act of oral sodomy, for which the defendant was also charged. *Id.*

On appeal, the state conceded that the statutory reference to "witness an act of sexual conduct" referred only to *live* acts of sexual conduct, but argued that we should nevertheless affirm that conviction because the defendant had caused the child to "witness an act of sexual conduct" when he sodomized her. *Id.* at 540-41. We agreed. Significantly, in *Goddard*—and unlike in this case—the alternative basis for conviction urged by the state was predicated on facts that the jury had found in convicting the defendant of the sodomy

charge; that is, by causing the child to engage in an act of sodomy ("an act of sexual conduct") the defendant *necessarily* also caused the child to "witness" it. Thus, those operative facts were both fully litigated by the parties and necessarily determined by the jury at trial, effectively forestalling the concerns about fundamental fairness. That did not occur here. Accordingly, defendant's conviction for first-degree assault must be reversed.

That does not, however, conclude our consideration. The admittedly abstruse question of the correct disposition remains: Is defendant entitled (as defendant principally urges) to an unqualified judgment of acquittal on Count 1? Should we (as the state suggests) direct entry of a judgment of conviction for second-degree assault? Or should we (consistently with defendant's alternative disposition) vacate defendant's conviction for first-degree assault and remand for further proceedings?

We reject out of hand the state's suggested disposition because, like the state's proffered alternative basis for affirming the first-degree assault conviction, it would require us to usurp the jury's factfinding function. Here, because the jury convicted defendant of first-degree assault as an accomplice, it had no occasion to determine whether he had personally "[i]ntentionally or knowingly cause[d] serious physical injury" to the victim. ORS 163.175(1)(a). Although there was arguably sufficient evidence from which the jury could have made that determination, it did not do so either expressly or by necessary implication in rendering its verdict. We cannot do so.[8]

Conversely, defendant's preferred disposition would also preempt the jury's function, albeit in a very different way. Entry of an unqualified judgment of acquittal, without a concomitant remand, on Count 1 would preclude any consideration of the lesser-included offenses encompassed within that count on which the jury was instructed, *see* 240 Or App at 646-47 n 5, but which the jury never considered because it

---

[8] The state does not suggest, in the alternative, that we enter a conviction for fourth-degree assault. *See* ORS 163.160(1)(a) (stating that fourth-degree assault occurs when a person "[i]ntentionally, knowingly or recklessly causes physical injury to another").

convicted defendant on the erroneously submitted greater-included offense.[9]

■ The sole remaining option is defendant's suggested alternative disposition: a remand permitting a retrial of the lesser-included offenses that the jury would have considered but for the erroneous denial of the MJOA against the first-degree assault charge. We acknowledge that such a remand is an imperfect disposition, both practically and prudentially, in that it may afford the state the opportunity to improve and refine its presentation and proof with respect to those charges.[10] Nevertheless, such consequences inhere in any remand allowing a retrial of previously litigated matters and, in the circumstances presented here, are not preclusive. Accordingly, we reverse defendant's conviction for first-degree assault and remand for further proceedings pertaining to consideration of the lesser-included offenses on which the jury was instructed, *viz.*, second-degree assault and fourth-degree assault.

Defendant's conviction for assault in the first degree reversed; remanded for further proceedings; otherwise affirmed.

---

[9] Defendant did not except to the jury being instructed in the lesser-included offenses and, concomitantly, does not contend on appeal that submission of the lesser-included offenses to the jury was somehow erroneous.

[10] If not necessarily a "second bite," such a remand allows the state to offer a better "apple." To be sure, defendant has the same opportunity—but the state, as the party with the burden of persuasion, could especially benefit.