Filed: October 11, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Petitioner on Review,

v.

CLIFTON CORY BURGESS,

Respondent on Review.

(CC C080070CR; CA A139500; SC S059499)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 1, 2012.

Susan G. Howe, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

David O. Ferry, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for respondent on review. With him on the brief was Peter Gartlan, Public Defender.

DE MUNIZ, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.


*Appeal from Washington County Circuit Court, Mark Gardner and Rick Knapp, Judges. 240 Or App 641, 251 P3d 765 (2011).

DE MUNIZ, J.

Defendant was charged by indictment with (among other things) assault in the first degree under ORS 163.185. At trial, the state proceeded solely under the theory that defendant had aided and abetted his codefendant's initial assault on the victim. A jury found defendant guilty. On appeal, the Court of Appeals reversed defendant's first-degree assault conviction and remanded to the circuit court for further proceedings on the lesser charges of second- and fourth-degree assault. *State v. Burgess*, 240 Or App 641, 251 P3d 765 (2011). We allowed the state's petition for review to examine whether, on appellate review, the state can sustain a criminal conviction on a theory of criminal liability that it did not pursue at trial. For the reasons set out in this opinion, we conclude that it cannot.

The facts recited by the Court of Appeals are sufficient for our review:

"On New Year's Eve 2007, defendant, [codefendant], and the victim were all guests at a party. All three were intoxicated, and the host provided methamphetamine to all three. Thereafter, when the host and the victim became involved in a physical confrontation, [codefendant] intervened and knocked the victim down with one or two punches. [Codefendant], who was wearing steel-toed boots, then kicked the victim three or four times in the face, 'like somebody kicking a football.' A bystander intervened to pull [codefendant] away from the victim, who was unconscious. [Codefendant] then walked away.

"Defendant and the victim had a hostile relationship. As [codefendant] assaulted the victim, defendant stood nearby, without participating. Approximately a minute and a half after [codefendant] had been pulled away, defendant approached the victim, who was lying face up, and 'stomped' him on the chest 'a couple of times.' Defendant then rolled the victim over, so that he was face down, grabbed his hair, and then 'pile-drived' or 'slammed' the victim's face into the muddy ground several times, saying, 'Don't ever disrespect me again.' Finally, and before stopping, defendant punched the victim in the face several times in the same area

1

where the victim had been kicked by [codefendant]. After bystanders carried the victim away for medical care, defendant and [codefendant] 'high-fived,' congratulating each other. There was, however, no evidence that defendant and [codefendant] had jointly planned or otherwise coordinated their conduct.

"The victim suffered, among other injuries, a fractured right eye socket, which required reconstructive surgery, several other facial fractures, including to his jaw, and a lacerated arterial vein in his left temple. Ultimately, at trial, no expert medical testimony was presented relating or apportioning those injuries, or their degree or severity, to [codefendant's] and defendant's respective conduct.

"Defendant and [codefendant] were both charged with, *inter alia*, first degree assault. ORS 163.185.[2] The indictment charging defendant alleged, without elaboration, that defendant 'did unlawfully and intentionally cause serious physical injury to [the victim] by means of a dangerous weapon,' without referring to either principal or accomplice liability. Although [codefendant] waived a jury, and defendant did not, the two were tried jointly; thus, defendant was tried before a jury while [codefendant] was tried simultaneously before the court."

_____

"[2]    ORS 163.185 provides, in part:

'(1) A person commits the crime of assault in the first degree if the person:

'(a) intentionally causes serious physical injury to another by means of a deadly or dangerous weapon[.]'

'Defendant was also charged with one count of third-degree assault, which the state dismissed, and one count of unauthorized use of a weapon, on which the jury acquitted defendant.'"

*Burgess*, 240 Or App at 643-44.

At trial, the state asserted that defendant had aided and abetted

codefendant's assault by "'compound[ing]' the injuries that [codefendant] had inflicted"

using steel-toed boots. *Id.* at 645 (first alteration in original). At the close of the state's

2

case, defendant moved for a judgment of acquittal, arguing that the state had failed to establish the necessary connection between what defendant characterized as "the only dangerous weapon in the case," codefendant's steel-toed boots, and defendant's subsequent conduct. *Id.* The state countered that, because defendant "went for the same place" when defendant had punched the victim and slammed his head into the muddy ground, defendant had furthered the commission of the injury caused by codefendant, thus aiding and abetting codefendant's assault. *Id.* at 646. The trial court denied defendant's motion, reasoning that, "viewing the evidence most favorably to the state, there was a triable issue of fact for the jury as to 'whether or not there was aiding and abetting.'" *Id.* At the close of trial, the jury convicted defendant of assault in the first degree.

Defendant appealed, arguing that there was insufficient evidence to convict him of first-degree assault as an accomplice. In response, the state argued that, even if the evidence at trial did not support defendant's conviction as an accomplice, there was sufficient evidence in the record to support defendant's conviction as a principal. In support of that argument, the state asserted that the muddy ground that defendant had slammed the victim's head into was a dangerous weapon and that the victim had suffered serious physical injuries as a result.

In reversing defendant's conviction for first-degree assault, the Court of Appeals first held that the evidence was not sufficient to support defendant's conviction as an accomplice, stating:

"Although defendant assaulted the victim about a minute and a half after

3

[codefendant] had broken off his assault, there is nothing -- aside from defendant's 'mere presence' when [codefendant] was kicking the victim -- to establish that [codefendant's] conduct and defendant's conduct constituted anything more than uncoordinated, *seriatim* assaults."

*Id.* at 651. Second, the Court of Appeals rejected the state's argument that defendant's conviction could be sustained on appeal on the separate factual and legal theory that defendant was guilty as a principal. According to the Court of Appeals, to sustain defendant's conviction on the state's separate theory of principal liability would deprive defendant of "actual notice" and offend "overriding principles of due process." *Id.* at 653 (internal quotation marks and citation omitted). Although the Court of Appeals reversed defendant's conviction for first-degree assault, it remanded the case to the trial court for further proceedings on the lesser crimes of second- and fourth-degree assault. As noted, we allowed the state's petition for review.

On review, the state makes two arguments. First, the state contends that, because it presented sufficient evidence at trial to permit the jury to find the essential elements of first-degree assault under *any* permissible legal theory of criminal liability, and because the trial court's instructions permitted the jury to convict defendant of first-degree assault without identifying him as a principal or as an accomplice, defendant's due process rights would not be violated by sustaining defendant's conviction on a theory different than the one presented at trial. Second, the state argues that, even if the Court of Appeals correctly reversed defendant's conviction, it would not offend double jeopardy principles to remand the case to the trial court to permit the state to again try defendant on the charge of first-degree assault.

4

In response, defendant argues that, at trial, the prosecutor "elected" as a matter of law to confine the state's prosecution under the indictment to accomplice liability, and for that reason the state is barred on appeal from arguing a separate theory of criminal liability. *See, e.g., State v. Goddard*, 69 Or 73, 89, 138 P 243 (1914) (when state selected some particular act as constituting the crime, jury not permitted to find defendant guilty of some other criminal act); *accord State v. Ewing*, 174 Or 487, 494, 496, 149 P2d 765 (1944) (prosecutor's statement in rebuttal was too late to qualify as an election).

We need not determine whether the state made such an election here. Rather, we conclude that, under the circumstances of this case, it would be fundamentally unfair to defendant to sustain defendant's conviction on a separate factual and legal theory that has been proffered by the state for the first time on appeal.

In his opening statement, the prosecutor told the judge and the jury that the dangerous weapons used in the assault were "the steel-toed work boots" that codefendant had been wearing, and that defendant had aided and abetted the commission of codefendant's assault -- compounding the victims' injuries by smashing the victim's head into the ground. *Burgess*, 240 Or App at 644-45. In response to defendant's motion for judgment of acquittal, the prosecutor argued only that defendant's acts furthered the commission of injuries caused by codefendant. *Id.* at 645-46. And, finally, in his closing argument, the prosecutor argued only that defendant assisted the codefendant in the assault of the victim. *Id.* at 646.

As the parts of the record described above demonstrate, the state never

contended at trial that defendant's actions were sufficient to convict him of assault in the first degree as a principal. Nevertheless, the state points out that the indictment alleged that defendant "did unlawfully and intentionally cause serious physical injury to [the victim] by means of a dangerous weapon." Unquestionably, the allegation in the indictment was sufficient to allege the crime of first-degree assault and was sufficient to permit the state to proceed against the defendant at trial either as a principal, an accomplice, or both. In other words, the state could have pursued both theories of criminal liability at trial. It is clear from the record, however, that the state informed the trial court and defendant that it was pursuing only one theory -- accomplice liability. Because the state took that position, neither defendant nor the trial court was aware of the separate factual and legal theory that the state now asserts on review. Accordingly, there was no reason for defendant to challenge or rebut any factual contentions as to whether the "muddy ground" (as opposed to the codefendant's steel-toed work boots) met the statutory definition of a dangerous weapon,[1] or whether any of defendant's actions independently caused serious physical injury under the pertinent statutory definition.[2] As

---

[1] ORS 161.015(1) defines a "dangerous weapon" as

"any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."

[2] ORS 161.015(8) defines "serious physical injury" as a

"physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or

6

an initial matter, we observe that requiring defendant to challenge or rebut those undecided factual and legal issues for the first time on appeal does not comport with a system of appellate review premised on ensuring fairness to an opposing party by permitting the opposing party to respond to a contention and by otherwise not taking the party by surprise. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (policies underlying preservation are prudential; preservation saves judicial resources by giving the trial court the opportunity to decide the issue in the first instance, and it ensures fairness by giving the opposing party a chance to respond to a contention, while it also promotes full development of the record needed by both the trial and appellate courts).

Despite the state's failure in the trial court to pursue the separate factual and legal theory that defendant was guilty as a principal, the state points out that the jury instructions on the elements of first-degree assault did not prohibit the jury from concluding that defendant was guilty as a principal, and that the evidence could have permitted both the trial court and the jury, in its ultimate determination, to conclude that defendant used the "muddy ground" to cause serious physical injury to the victim independent of the injuries caused by codefendant's steel-toed boots. In effect, the state asserts that defendant's conviction should be sustained on appeal under the principle that

protracted loss or impairment of the function of any bodily organ."

7

an appellate court may affirm a correct decision of a trial court on a basis other than the one on which the trial court relied. *See State v. Rogers*, 330 Or 282, 295, 4 P3d 1261 (2000) (even if trial court's legal reasoning for ruling was erroneous, court will affirm if ruling is supported by another legally correct reason and record developed in trial court).

In this case, however, the conditions necessary to apply the sometimes denominated principle of "right for the wrong reason" cannot be met. This court, in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 20 P3d 180 (2001), explained that application of the "right for the wrong reason" principle is a matter of appellate court discretion, subject to the following conditions:

> "The first condition is that, if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

*Id.* at 659-60 (emphasis in original).

Here, the third condition necessary to apply the "right for the wrong reason" principle has not been met. Specifically, it is highly likely that defendant would have developed the record differently if defendant had had actual notice that the state was pursuing principal liability against him on the theory that the "muddy ground" was a dangerous weapon and that defendant's actions independently caused serious physical

8

injury to the victim. As defendant points out, he did not have any reason to develop the factual record regarding whether the actual muddy ground condition could have constituted a dangerous weapon. Neither did defendant have any reason to develop any medical evidence regarding the likelihood, if any, that the "muddy ground" caused serious physical injury to the victim independent of codefendant's steel-toed boots. Because the state never asserted that defendant independently had used the "muddy ground" as a dangerous weapon that independently had caused serious physical injury to the victim, defendant had no opportunity or reason to raise factual and legal challenges on those issues by way of motions to the trial court or argument to the jury.[3]

In summary, the state's failure in this case to pursue the separate factual and legal theory of principal liability at trial now precludes the state from successfully asserting that theory on appellate review as a means to sustain defendant's conviction for assault in the first degree.

That does not, however, conclude our analysis. The state also contends that

---

[3] Furthermore, because the state's separate factual and legal theory was not pursued in the trial court, the trial court record does not permit meaningful appellate review of the trial court proceedings in that respect. As we have noted previously, the state contends that the jury instructions did not prohibit the jury from concluding that defendant was guilty as a principal. We agree with that proposition as an abstract matter. However, even assuming that the evidence permitted the jury to conclude both that the "muddy ground" was a dangerous weapon and that defendant intended to and did cause separate serious physical injury to the victim, the record is devoid of any indication that the jury made any such determination.

9

the Court of Appeals incorrectly remanded the case to the trial court for further proceedings only on the lesser charges of second- and fourth-degree assault. In that regard, the state argues that on remand it should be permitted to retry defendant for assault in the first degree. According to the state, the reversal of defendant's conviction for first-degree assault is not based on the insufficiency of the evidence to warrant a conviction, but, instead, is based on the state's failure to notify defendant that it intended the jury to be able to convict defendant as a principal as well as an accomplice.

We do not address the state's argument. It has long been the rule in this court that we will not address arguments that were not raised in the Court of Appeals. *See State v. Castrejon*, 317 Or 202, 209 n 9, 856 P2d 616 (1993) (failure to raise an issue in the Court of Appeals generally precludes review by this court); *Tarwater v. Cupp*, 304 Or 639, 644 n 5, 748 P2d 125 (1988) (petitioner in Supreme Court "cannot shift or change his position and argue or raise an issue that was not before the Court of Appeals"). In this case, the state argued in the Court of Appeals only that, if the Court of Appeals "concludes that the evidence was insufficient to support defendant's conviction for first-degree assault, the remedy is to reform the conviction to one for second-degree assault." Reforming defendant's conviction to one for a lesser crime, as the state argued in the Court of Appeals, does not even come close to addressing the complicated former jeopardy questions that surround the state's new argument in this court that it should be permitted to again try defendant for the crime of assault in the first degree. Accordingly, we do not address the state's argument.

Neither party addresses the correctness of the Court of Appeals'

10

determination that on remand defendant can be prosecuted for the lesser offenses of second- and fourth degree assault arising out of the same criminal episode.  Because that question also is not before us, we express no opinion on the correctness of the Court of Appeals' disposition in that regard.

The decision of the Court of Appeals is affirmed.  The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.